UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FANTAGRAPHICS BOOKS, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>EMIL FERRIS,<br><br>        Defendant. | No.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

## I.    INTRODUCTION

1.    Plaintiff Fantagraphics Books, Inc. ("Fantagraphics") is a small independent book publishing company that was co-founded (by its current Publisher) in 1976 and has been based in this district since 1989. In all those years, it has never before sued any of its authors and it reluctantly does so now for the first time, and only for a declaratory judgment confirming its legal right to publish a book that the defendant submitted to it for publication and agreed by contract to that publication.

2.    Defendant Emil Ferris ("Ferris") is that author, and the work at issue is her graphic novel MY FAVORITE THING IS MONSTERS ("MONSTERS"), the first volume of which was very successfully published by Fantagraphics in February 2017. That publication has generated for Ferris more than $450,000 in royalties and other income and concomitant profits to Fantagraphics.

3. In addition to Ferris and Fantagraphics, two other names appear in the recounting below of the underlying events: Gary Groth ("Groth"), who is Fantagraphics' co-founder and Publisher and the Editor of MONSTERS, and Holly Bemiss ("Bemiss"), who was at all relevant times Ferris' trusted literary agent. (In November 2018 Ferris confirmed to Groth: "The only person I've ever authorized to be my agent and in communication with you about my work is Holly Bemiss.")

4. One example of the (prior) relationship of the parties is this excerpt from a May 2017 email from Ferris to Groth:

> I'm so pleased that Holly and I ended up working with you, Gary. Fantagraphics has worked so hard to make the book's success a reality. You and the Fantagraphics team - Jacq, Jacob and Preston as well as others - have accomplished something big with MFTIM.
>
> I'm excited about the good things that I'm hoping will happen with Book 2.
>
> Holly, Gary and all - I feel well-supported by the single best support team an author could have!

## II.   THE PARTIES

5. Fantagraphics is a Washington State corporation with its principal place of business in this district.

6. Ferris is an author and artist who on information and belief is a citizen and resident of the State of Illinois. On information and belief, the first volume of MONSTERS is her only published book.

## III.   JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) and the Declaratory Judgment Act, 28 U.S.C. §2201. Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(2) and in accordance with the applicable provisions of the parties' underlying contract.

COMPLAINT FOR DECLARATORY
JUDGMENT – 2

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA 98203
(206) 799-4843

### IV.   UNDERLYING FACTS

8. In or about August 2015, Ferris, through Bemiss, submitted to Fantagraphics a very long (approximately 600 pages) manuscript for MONSTERS. In response to Groth's expression of interest, Bemiss wrote in part: "[Ferris] is open to releasing this as one big book or two volumes. She has ideas as to how best to split the book, but does want to find an editor who really knows comics, and will be her guide." The parties thereafter reached agreement on the terms pursuant to which Fantagraphics would publish that work. The parties' "PUBLISHING AGREEMENT" confirming that agreement is dated January 12, 2016 ("Publishing Agreement") and is annexed hereto as Exhibit A.

9. At about the time the Publishing Agreement was signed, the parties agreed that MONSTERS was too long to be successfully published in a single volume and that it would therefore be published in two separate volumes. Acting as Ferris' agent, Bemiss explicitly confirmed and publicly announced that agreement by preparing and releasing to the book industry this statement (emphasis added):

> Gary Groth at Fantagraphics acquired world rights to *My Favorite Thing Is Monsters*, by Emil Ferris. Drawn as the journal of a ten-year-old girl, the story follows her attempt to solve the mystery of the death of her beloved neighbor, a Holocaust survivor. Ferris's drawings reflect a world where the monstrous is beautiful, and where goodness is found in the most unlikely places. <u>The 600+ page, four color graphic novel will be published in 2 volumes, beginning in September 2016.</u> Holly Bemiss of the Susan Rabiner Literary Agency closed the deal.

10. With Ferris' full support and agreement, and publishing from the manuscript that she initially submitted to it in 2015, Fantagraphics published the first volume of MONSTERS in February 2017. The first ("title") page of the published book proclaims (in very large colored type) "MY FAVORITE THING IS MONSTERS," followed immediately (also in large type) by "BOOK ONE." (For consistency and clarity, and adopting Ferris' preferred nomenclature, that first volume will hereafter be referred to as "Book 1" and the second volume "Book 2.")

COMPLAINT FOR DECLARATORY
JUDGMENT  – 3

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*
*(206) 799-4843*

11. The spine of Fantagraphics' print edition of Book 1 of MONSTERS clearly states (in all caps): "BOOK ONE." The copyright indicia page of that edition describes the within book as "MY FAVORITE THING IS MONSTERS VOLUME ONE."

12. Fantagraphics maintains that there is nothing "ambiguous" about the Publishing Agreement, including with respect to the identification of the work to be published pursuant to it. However, in the event such an ambiguity is suggested, the remainder of this Complaint will set forth the "context" in which that claimed ambiguity must be considered. In that connection, Fantagraphics is guided by the following statement from the Ninth Circuit, referencing Washington law:

> Washington law endorses the "context rule" over the so-called "plain meaning rule" to ascertain contracting parties' intent. *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222, 229 (Wash. 1990) (*en banc*). The context rule allows the court to consider certain extrinsic evidence to interpret the contract's written terms. *Hearst Comm'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (*en banc*). However, extrinsic evidence may only be used "to determine the meaning of specific words and terms used and not to show an intention independent of the instrument or to vary, contradict or modify the written word." *Id.* (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 974 P.2d 836, 843 (Wash. 1999) (*en banc*) (internal quotations omitted)).

*Port of Vancouver, USA v. Pacific Coast Shredding, LLC*, 823 Fed. Appx. 538, 2020 U.S. App. LEXIS 31060, 2020 WL 5815994 (9th Cir. 2020) (unpublished opinion) (emphasis in original).

13. In or about early 2016, when the date for the publication of Book 1 was agreed-to, the parties (and Bemiss) further agreed that Book 2 – the second half of the manuscript Ferris submitted in 2015 – would be published in July 2017. With no objection from Ferris or Bemiss, Fantagraphics prominently announced that July 2017 publication date for Book 2 in its catalogue for that publishing season.

14. Once the Publishing Agreement was fully signed and the decision to publish MONSTERS in two volumes made, Fantagraphics began granting licenses to various foreign publishers to publish both separate volumes. Numerous such licenses, which specified the separate publication of Book 1 and Book 2, were granted, and separate advance payments for

COMPLAINT FOR DECLARATORY
JUDGMENT  – 4

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*
*(206) 799-4843*

each volume were received by Fantagraphics. Ferris was not only fully informed at the time of those licenses, she was sent copies of the actual licenses and was sent her contractual share of those advance payments, including those specifically attributable to Book 2. Ferris fully and without objection approved and supported Fantagraphics' licensing of rights to Book 2.

15. In early 2016, more than a year before the agreed publication date for Book 2, Ferris advised Fantagraphics that she wanted to edit somewhat (here "polish") the second half of MONSTERS before it was published on that agreed date, promising that she would deliver her polished version to Fantagraphics in time to have the book published then.

16. Fantagraphics agreed to Ferris' editing request for an opportunity to "polish" a work that was already complete and accepted and under contract (the Publishing Agreement) for publication. However, Ferris failed to meet the agreed deadline, thus thwarting the scheduled July 2017 publication.

17. Addressing this failure, Ferris and Bemiss and Fantagraphics agreed to reschedule the publication of Book 2 to October 2017, with Ferris again promising that she would deliver her "polished" version in time to have it published then. As a result, again without objection by Ferris or Bemiss, Fantagraphics prominently announced in its catalogue that Book 2 would in fact be published, this time in October 2017. But once again Ferris failed to meet her new agreed deadline.

18. After further communication with Ferris and Bemiss, Fantagraphics agreed that Book 2 would now be published in April 2018, and, for the third time, Fantagraphics publicly announced that new publication date, again without objection from Ferris or Bemiss. But Ferris once again failed to meet her deadline for that publication.

19. By that time, relying each time on Ferris' assurances that she would deliver her "polished" version of Book 2 on time, Fantagraphics had publicly announced a date for the publication of that work in <u>three separate catalogues</u> – all without any objection by Ferris or Bemiss. Fantagraphics' distributor expended substantial resources mobilizing its sales force <u>three separate times</u> to sell the book to retailers, wholesalers, chains, etc., and Fantagraphics

COMPLAINT FOR DECLARATORY
JUDGMENT – 5

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*
*(206) 799-4843*

itself created marketing materials and otherwise prepared for publication <u>three separate times</u>, only each time having to inform all concerned that their efforts should be stopped and orders rescinded, etc., because the book would not be forthcoming when it was promised.

20. Fantagraphics then informed Ferris that it could not risk further damaging its relationships with its distributors and retailers and the publishing industry at large by re-announcing the publication of Book 2 a fourth time unless and until she actually delivered it. Which, to date, four years after the publication of Book 1, and despite her repeated promises, she has still failed to do.

21. Until very recently, Ferris never suggested that Fantagraphics did not have the contractual right to publish Book 2. Instead, at different times, she blamed her failure to deliver the promised version on her mental and/or physical health, on a defective computer, and on her claimed need to generate other income. But lately, for the first time, mostly through her newly-acquired lawyers, she has claimed that Fantagraphics does not even have the right to publish Book 2. And it is that claim that has compelled Fantagraphics to bring this action for a declaratory judgment establishing its right to do so.

22. Over the past five years or so, Ferris has repeatedly confirmed in writing the foregoing rendition of the facts underlying this action. Fantagraphics will here only present a sampling of those writings.

    a. Even before the initial public announcement of the two-volume publication of MONSTERS in early 2016 (quoted at Paragraph 9 above), Ferris confirmed her understanding that MONSTERS would be published in two volumes when she wrote to Groth that "[t]he first volume is 386 pages."

    b. In May of the following year (2017), Ferris further confirmed the two-volume publication of MONSTERS under the Publishing Agreement and her obligation to deliver her polished version of Book 2 when she wrote (emphasis added): "Having [Bemiss] do her role means that all such is off my shoulders <u>which allows me to focus on the most important aspect of my role, (which is getting Book 2 sent to you ASAP</u>)."

COMPLAINT FOR DECLARATORY  
JUDGMENT  – 6

*Endejan Law, LLC*  
*5109 23rd Ave. W*  
*Everett, WA 98203*  
*(206) 799-4843*

c. Later that year, Ferris again confirmed the two-volume publication of MONSTERS under the Publishing Agreement when she wrote (emphasis added): "<u>I'm trying to work concurrently on Book 2, because I feel the need to get that out ASAP.</u>"

d. On February 23, 2018, Ferris wrote to Groth (emphasis added): "Hi Gary, <u>I've reassessed travelling in favor of banging out the book, but I will need April for the last half of the book and I need to know if I have April. I need to know that if I take April to finish I have a commitment from you to bring it out this year. I know you are travelling but could you respond Asap?</u>"

e. On March 27, 2018, Ferris wrote in part to Groth (emphasis added):

> I will tell you this: I am no fortune teller but I am working very hard. <u>You need to see something of the book and we need to talk about how to get this done. I am intending to send you the first portion of the book on April 2nd (April 1st isn't fortuitous). At that point we should discuss what to do going forward.</u> Many thanks for your patience and faith in me. Many apologies for the difficult aspects of your end of our magic spell. Emil

f. On April 18, 2018, Ferris wrote to Groth (emphasis added): "<u>We've both hoped that Book 2 could be brought out this year.</u> I've given it a lot of thought and don't believe that will happen. I've tried every approach I can to edit and condense but the book is demanding that I take more time."

g. Most recently, in January 2021, on Facebook, Ferris responded to a fan's question about Book 2 – "Will there ever be, Emil?" – as follows (emphasis added): "<u>I believe so and sooner rather than later if I get what I need.</u>"

23. Again, the above communications are only a sample of all of Ferris' repeated written confirmations that she understood and agreed at all times that MONSTERS would be published in two volumes under the Publishing Agreement. In addition, there is also a trove of similar such confirmations by Bemiss, Ferris' agent, all of which is binding on Ferris. Here is a sampling of Bemiss' written confirmations that all concerned understood and agreed that MONSTERS would be published in two volumes under the Publishing Agreement:

COMPLAINT FOR DECLARATORY JUDGMENT – 7

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*
*(206) 799-4843*

       a.      On December 14, 2017, Bemiss wrote to Groth:

> Hi Gary, what would happen if Emil could do this?
> Jan 15: 200 pages
> March 15: 200 pages
>
> Book 2 would be 400 pages
> Would a 2018 pub date still be a possibility?

       b.      On that same date, Bemiss further wrote to Groth in part:

> In my opinion, it is not other freelance that is keeping her from finishing Book 2. (Or socializing online for that matter.) It is that she has gotten in there and gotten caught up in the story. And, I think she's now realized that she has 50K readers (instead of none. with book 1) and is intimidated. Or something. I can't quite figure out what is going on. But in any case it will be good for her profile (and book sales) if she does the cover. It would depend on the dates, though. I don't know if she is working on anything other than book 2 now.

       c.      On March 15, 2018, Bemiss wrote to Groth: "Hi Gary, Emil says, 'I'm still aiming for the end of April.' So that's where we are! Thanks, Holly."

    24.    On February 8, 2021, Fantagraphics received a formal letter from lawyers representing Ferris. Presumably unintentionally, that letter <u>confirmed</u> that Fantagraphics had the right to publish MONSTERS – *i.e.*, the work submitted by Ferris to Fantagraphics under that title in 2015. Instead, that letter <u>only</u> asserted that Fantagraphics did not have the right to publish a "sequel" to MONSTERS – something Fantagraphics had no intention of doing and something that was never before even mentioned by Fantagraphics, Ferris or Bemiss. In short, that letter both conceded that Fantagraphics had the right to publish MONSTERS but only contended that it did not have the right to publish a "sequel" to it, a complete non-starter that Fantagraphics readily confirmed. That letter asserted in relevant part (boldface in original, underscoring added):

> **CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY (FRE 408)**
>
> **Re: Cease and Desist From**
> **Publishing Unauthorized Sequel to My Favorite Thing Is Monsters**
> **Client-Matter No. 141942.3000**
>
> Dear Mr. Groth:

COMPLAINT FOR DECLARATORY
JUDGMENT  – 8

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*
*(206) 799-4843*

> We represent Emil Ferris in connection with her intellectual property matters. We understand that Fantagraphics Book Inc. entered into a Publishing Agree-ment (the "Agreement") with our client to publish her book entitled My Favor-ite Thing Is Monsters ("Monsters") in 2016 and that you have been communi-cating with her regarding a sequel. [sic] All further communications with Ms. Ferris regarding this matter should be directed to my attention. To the extent that you have already retained counsel to represent you in this matter, please provide us with your counsel's contact information and we will direct all future communications to your counsel.
>
> We are writing to address serious concerns that our client has raised regarding Fantagraphics' intent to publish an unauthorized sequel to Monsters. In particular, we require your immediate assurance that Fantagraphics will not itself (nor through its affiliates, licensees, agents or otherwise) publish or authorize publication of a sequel to Monsters. Please provide this confirmation in writing no later than February 10th. With that confirmation, we then welcome a conversation with you (or your counsel) as soon as possible to discuss our client's concerns, outlined below.
>
> 1. Fantagraphics is not authorized to publish a sequel.
>
> We have reviewed the Agreement, and it does not grant rights to Fanta-graphics to publish a sequel to Monsters. The Agreement by its express terms pertains only to the Monsters book.

25.     Notwithstanding that bizarre letter, as far as Fantagraphics is aware the word and the concept of a "sequel" to MONSTERS was never once used in any of the prior five-plus years of communications between the parties and Fantagraphics never once expressed any interest or desire to publish a "sequel" to MONSTERS. But Fantagraphics does completely agree with that letter to the extent it asserts the factual and legal conclusion that "[t]he Agreement by its express terms pertains only to the Monsters book."

26.     On March 5, 2021, responding to a February 10 letter from Fantagraphics' counsel, Ferris' lawyers responded in part (boldface in original, underscoring added):

> **CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY (FRE 408)**
>
> We write in response to your February 10th letter.
>
> <u>First, please let us know whether Fantagraphics has any written amendment(s) to the Publishing Agreement signed by both parties. We are not aware of any, but we trust you will provide any written amendments your client has for our review.</u> The emails from our client that you reference in your letter clearly do not constitute an amendment to the Publishing Agreement. In addition, the fact that she discussed a "Book 2" in the emails does not mean she was bound to publish such a book with Fantagraphics

COMPLAINT FOR DECLARATORY
JUDGMENT – 9

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*
*(206) 799-4843*

\* \* \* \*

> Finally, for the avoidance of any doubt and because you have not directly responded to our request for assurance that Fantagraphics will not itself (nor through its affiliates, licensees, agents or otherwise) publish or authorize publication of a sequel to *Monsters*, <u>we reiterate that your client is not authorized to publish any sequel to Monsters and this includes what you are calling "Book 2" or "Volume 2". To the extent your client has material from our client that was not included in *Monsters*, Fantagraphics is not authorized to use or publish that material for a Book 2, a Volume 2 or any other purpose.</u>
>
> Our client reserves all rights and remedies.

27.   As quoted above, Ferris' attorneys' March 5 letter asserts as follows: "To the extent your client has <u>material from our client that was not included in *Monsters*</u>, Fantagraphics <u>is not authorized to use or publish that material for a Book 2, a Volume 2 or any other purpose</u>" (emphasis added). However, as those lawyers were apparently unaware, Book 2 – Ferris' term for the second half of the manuscript she submitted to Fantagraphics in 2015 under the title "MY FAVORITE THING IS MONSTERS," which manuscript is the undisputed subject of the Publishing Agreement – consists <u>entirely</u> of "<u>material</u>" that was <u>included</u> in "<u>*Monsters*</u>." Thus, Fantagraphics completely agrees with Ferris' counsel that it is "authorized" to publish Book 2 – because it consists of "<u>material</u>" that was "<u>included</u>" in <u>MONSTERS</u>.

28.   Nevertheless, Ferris' attorneys' *ipse dixit* edict could also be understood to proclaim – as a formal legal matter, with the unmistakable threat of litigation, *e.g.* "FRE 408") – that Fantagraphics does not have the right to publish even what Ferris and Bemiss and Fantagraphics have for over five years understood and agreed and referred to as "Book 2" under the Publishing Agreement. Because of that possible interpretation of Ferris' attorneys' March 5 letter, this action for a declaratory judgment on that issue has become necessary. Obviously, if Ferris disavows that interpretation of that letter, and confirms that (to quote her lawyers) Fantagraphics is "authorized" to publish as Book 2 "material" that was "included" in what she submitted to Fantagraphics for publication under the MONSTERS title, with an appropriate Stipulation this action can immediately be withdrawn as no longer necessary.

COMPLAINT FOR DECLARATORY
JUDGMENT – 10

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*
*(206) 799-4843*

29. Because of Ferris' repeated failure to meet her agreed delivery-dates, Fantagraphics has been forced to defer publication of Book 2 three times since 2017. It can no longer do so. There is a substantial readership that has repeatedly been promised that publication since 2017 and Fantagraphics believes it must keep its promise to that readership to publish that book.

30. While Fantagraphics would prefer to publish Ferris' promised "polished" version of Book 2, if she continues to refuse to deliver that version Fantagraphics is ready, willing and able to publish the second half of MONSTERS – Book 2 – as Ferris in 2015 submitted it for publication under the Publishing Agreement. The goal and necessity of this action is to ensure that Ferris' last-minute claim that Fantagraphics does not have the right to do so is removed as a litigation-threatened barrier to that publication.

**CAUSE OF ACTION FOR DECLARATORY JUDGMENT**

31. Fantagraphics incorporates here the contents of Paragraphs 1 through 30 above.

32. As demonstrated above, there is a real and actual controversy between Fantagraphics and Ferris with respect to whether Fantagraphics has the right to publish Book 2 of MONSTERS.

33. As demonstrated above, Fantagraphics is entitled to a judgment declaring that it has the right to publish as "Book 2" the second half of the manuscript of MONSTERS that she submitted to Fantagraphics in 2015 and that she agreed would be published by Fantagraphics in the 2016 Publishing Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Fantagraphics prays for judgment against Ferris as follows:

A. Declaring that Fantagraphics has the right to publish Book 2 of MONSTERS, *i.e.*, the second half of the manuscript she submitted to Fantagraphics under that title in 2015;

B. Directing Ferris to cease and desist from interfering with that publication;

COMPLAINT FOR DECLARATORY
JUDGMENT – 11

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA 98203
(206) 799-4843

C. To the extent available under applicable law, awarding Fantagraphics its attorneys' fees in this matter; and

D. Awarding such other and further equitable and legal relief as the Court may deem just.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b), Fantagraphics demands a trial by jury of all issues so triable.

DATED  June 13, 2020.

                                            Respectfully submitted,

                                            ENDEJAN LAW LLC

                                            *s/Judith A. Endejan*
                                            Judith A Endejan, WSBA #11016
                                            5109 23rd Avenue West
                                            Everett, WA. 98203
                                            Ph: 206-799-4843
                                            Email: jendejan@gmail.com

                                            Kenneth P. Norwick*
                                            NORWICK & SCHAD
                                            110 East 59th Street
                                            New York, NY 10022
                                            Ph. 212-751-4440
                                            Email: ken@norwickschad.com
                                            *Pro Hac Vice Pending*

                                            *Attorneys for Plaintiff*