# EXHIBIT "A"

# PUBLISHING AGREEMENT
## *MY FAVORITE THING IS MONSTERS*

THIS AGREEMENT, dated January 13, 2016, between Emil Ferris, with her principal place of business at PO Box 5601; Evanston IL 60204, and FANTAGRAPHICS BOOK INC., with its principal office at 7563 Lake City Way Northeast, Seattle, Washington 98115 (the "Publisher"), is to evidence:

1. Definitions. For purposes of this Agreement the following definitions shall apply:

    (a) The term "Book" shall mean a compilation of the Work in book form currently titled *My Favorite Thing is Monsters*.

    (b) The term "Territory" shall mean worldwide.

2. Period of Agreement. (a) The period of this Agreement shall commence on the date of the Agreement and continue as long as the book is in print, i.e., available from the Publisher in wholesale quantities.

3. Rights. The Author grants to the Publisher during the term of copyright, including renewals and extensions thereof:

    a. Exclusive rights in the English language, in the United States of America, the Philippine Republic, Canada, and the British Commonwealth, and exclusive foreign-language rights in all other countries to:

        i. Print, publish, and sell the Work in hard cover and soft cover book form;

        ii. License publication of the Work (in complete, condensed, or abridged versions) by book clubs, including affiliates of the Publisher;

        iii. License publication of a reprint edition by another publisher;

        iv. License publication of the Work (in complete, condensed, or abridged versions) or selections from the Work in anthologies and other publications, in mail-order and schoolbook editions; or as premiums and other special editions, and through microfilms, Xerox or other forms of copying;

        v. License periodical publication after book publication to the extent that any such right is available;

        vi. License publication of a translated or foreign edition of the work by another publisher.

        vii. Provide electronic and digital versions of the book in the form of e-books or variations thereof.

    The Publisher shall pay to the Author fifty percent (50%) of the amount received from the disposition of licenses granted pursuant to Paragraph 3, subdivision a, ii, iii, iv, v, and vii. And seventy percent (70%) of vi. Subdivisions ii, iii, iv, and v. Shall be approved by the author.

4. Royalties.

   (a) Percentage Royalties. On all copies of the Book sold by the Publisher, the Publisher shall pay The Author an advance of $12,000.00 against the following royalties based on the Publisher's suggested retail list price for the Book (the "retail price"):

   (i) On all copies of each book up to 25,000 copies sold: 8% of the retail price;

   (ii) On all copies of each Book sold in excess of 25,000 copies: 10% of the retail price.

   The advance will be split between the author and author's agent. The author will be paid eighty-five percent (85%) in monthly installments of $750 until she is paid in full or until the author requests the full amount due. The agent will be paid fifteen percent (15%) upon execution of this agreement.

   (b) Book Club Sales. On all copies of the Book sold by the Publisher to a book club, the Publisher shall pay The Author 10% of the net amounts received.

   (c) Quantity Discounts.

   For the first 10,000 copies sold: If in any accounting period the Publisher grants quantity discounts of more than 49%, the royalty payable on such copies shall be 80% of the then prevailing rate under subparagraph 4(a), but for quantity discounts of more than 59% off the cover price the royalty shall be 10% of the amounts received by the Publisher.

   For every copy over 10,000 copies sold: If in any accounting period the Publisher grants quantity discounts of more than 54%, the royalty payable on such copies shall be 80% of the then prevailing rate under subparagraph 4(a), but for quantity discounts of more than 59% off the cover price the royalty shall be 10% of the amounts received by the Publisher.

   (d) Remainder Sales. If the Publisher, any time after a date 18 months from initial publication of a Book, in the exercise of its reasonable judgment, determines that it is overstocked with copies of such Book and that it could not dispose of such copies within a reasonable period of time, it shall so notify The Author. For a period of 30 days following the date of its receipt of such notice, The Author shall have the right to purchase such overstock copies from the Publisher at cost. If The Author fails to respond to such notice within such 30-day period, or prior to the expiration of such 30-day period advises the Publisher that it does not wish to purchase such overstock copies, the Publisher shall then have the right to make remainder sales of such overstock copies at the best prices obtainable. The Publisher shall pay The Author 10% of the gross amounts actually received on such sales, unless the price received for such copies is at or below the Publisher's cost of manufacture, in which event no royalty shall be payable to The Author on such copies.

   (e) Returns. No royalties shall accrue on copies of the Book returned to the Publisher prior to any retail sale, nor on transportation charges allowed on such returns by the Publisher. No royalty shall be paid on copies of the Book accidentally destroyed.

(f) Bad Debts. Royalties shall accrue at the time of sale by the Publisher, regardless of the time of collection. Bad debts or losses due to uncollectibility of accounts shall not be charged to royalties accruing under this Agreement.

(g) Net Amount Received. For purposes of this Agreement, "net amount received" means gross income from sales less reasonable and documented shipping, handling, insurance and sales or similar taxes as incurred by Publisher.

5. Delivery of The Work. Required Delivery Date. The Author agrees to deliver to the Publisher The Work to be included in the Book according to a mutually agreed upon schedule. Delivery of repro proofs or digitized copies thereof will be deemed sufficient delivery. The Publisher agrees to publish the Work within 24 months of the date of this Agreement.

6. Procedures

   a) Free Copies: Additional Copies. On publication of each edition of each Book, the Publisher shall provide The Author with 5 free copies and he Agent with 2 free copies. The Author shall have the right to purchase additional copies of the Book at a cost equal to 50% off the retail price for the Book plus shipping.

   b) Author shall indemnify and hold Publisher, its licensees and assigns harmless against any loss, damage, cost or expenses, including, without limitation, reasonable attorneys' fees and costs, which may be sustained or incurred by Publisher, its licensees or assigns, by reason of any claim, demand, suit or recovery arising out of a claim of breach of any of Author's representations or warranties or of this Agreement. The Publisher may compromise or settle any such claim, provided, however, that no such settlement shall bind the Author without the Author's written consent, which shall not be unreasonably withheld. The warranties and indemnities contained in this Agreement shall survive the termination of this Agreement. In defending any claim, suit or proceeding arising out of any matter covered by this Agreement, Publisher shall have the right to defend the same with counsel of its own choosing, and Author shall fully cooperate with Publisher in the defense thereof. The Author may join in the defense of any claim, action or proceeding with counsel of the Author's choice at the Author's own expense.

7. Licensing

   (a) All rights (TV/movie/dramatic/multimedia/merchandising) not included in this contract belong to the Author.

8. Accounting: Payment of Royalties.

   (a) Accounting Period: Statements. For purposes of this Agreement, the term "accounting period" shall mean the first six months or last six months of each calendar year (i.e., January through June, and July through December). The Publisher shall furnish to The Author, within 90 days following the end of each accounting period, an accounting of the royalties due to The Author for such accounting period.

   (b) 25% of consignment royalties will be deferred by six months to allow for returns from the book trade. Returns will be calculated and that portion of the 25% held in reserve shall be reconciled and paid on every semi-annual statement.

(c) Payment of Royalties. The Publisher shall pay The Author and Agent all royalties due to The Author and Agent for any accounting period at the time it renders its accounting for such period. All royalty checks and accounting statements to be submitted to The Author under this Agreement shall be sent by the Publisher to the following address:

85% to:
Emil Ferris
PO Box 5601
Evanston IL 60204

15% to:
Holly Bemiss
240 8th Street #3N
Brooklyn NY 11215

Royalties will be split between the author and author's agent. The author will be paid eighty-five percent (85%) in monthly installments of $750 until she is paid in full or until the author requests the full amount due. The agent will be paid fifteen percent (15%) in standard accounting period.

9. Book of Account and Other Records. The Publisher shall keep full and accurate Book of account and other documents and materials relating to this Agreement at the Publisher's principal office at all times during the period of this Agreement. The Author or its duly authorized agent or representative, upon giving reasonable notice to the Publisher, shall have the right, during ordinary business hours, to examine, at The Author/Editor's expense, such Book, documents, and other material, and shall be at liberty to make copies of all or any part of such Book, documents, and other material. If an error is discovered as a result of any such examination, the party in whose favor the error was made shall promptly pay the other the amount of the error. Any such examination shall be at The Author/Editor's expense unless errors of accounting in Publisher's favor greater than 10 percent (10%) of the total sums paid to The Author with respect to the accounting period being examined under this Agreement are found, in which event Publisher shall pay the cost of the examination in addition to the amount of the deficiency and interest thereon at one percent (1%) per month. The Author rights pursuant to this paragraph 11 shall survive termination of this Agreement. If the Publisher fails to report sales or fails to pay the author the royalties due and does not resolve this within 60 days of notification by the Author or her agent, all rights will revert to the Author.

10. **Agency Clause**

The Author hereby authorizes and appoints Holly Bemiss (the Agent), of, 240 8th Street #3N Brooklyn NY 11215 to act as Author's agent under the terms of this agreement. The Author authorizes and directs FANTAGRAPHICS to divide and make all payments due to the Author hereunder as follows: 85 percent to Emil Ferris, at **PO Box 5601; Evanston IL 60204** and 15 percent to the Agent, Holly Bemiss 240 8th Street #3N Brooklyn NY 11215 The receipt by each of such parties shall be a full and valid discharge of the Publisher's obligations. The said Agent is hereby irrevocably empowered by the Author to act on the Author's behalf in all matters arising from and pertaining to this agreement. The designation of Holly Bemiss, as the Author's

agent shall survive the incapacity (mental of physical) or death of the Author and may be terminated only upon written notice to the Publisher, signed jointly by the Author (or Author's heirs, administrators, executors, successors, or assigns) and by such Agent (**or Agent's heirs, administrators, executors, successors, or assigns**).

11. Reversion of Rights on Termination. On the effective date of termination of this Agreement, all rights granted to the Publisher shall automatically terminate and revert to The Author.

**Miscellaneous**

(a) Copyright Notices. The copyright shall be as follows: Copyright © Emil Ferris.

(b) Parties Not Joint Ventures. Nothing contained in this Agreement shall be construed so as to make the parties partners or joint ventures or to permit the Publisher to bind The Author to any agreement or purport to act on behalf of The Author in any respect.

(c) Modifications of Agreement; Remedies. No waiver or modification of any of the terms of this Agreement shall be valid unless in writing, signed by both parties. Failure by either party to enforce any rights under this Agreement shall not be construed as a waiver of such rights, and a waiver by either party of a default in one or more instances shall not be construed as a continuing waiver or as a waiver in other instances.

(d) Invalidity of Separable Provisions. If any term or provision of this Agreement is for any reason held to be invalid, such invalidity shall not affect any other term or provision, and this Agreement shall be interpreted as if such term or provision had never been contained in this Agreement.

(e) Entire Understanding. This Agreement contains the entire understanding of the parties with respect to its subject matter. Any and all representations or agreements by any agent or representative of either party to the contrary shall be of no effect.

(f) Choice of Law. This Agreement and all disputes arising from or related to this Agreement or its subject matter shall be governed, resolved, and remedied in accordance with the laws of the State of Washington, applicable to agreements, acts, omissions, and behavior made, performed, and accomplished wholly in Washington, without resort to conflict of law principles.

(g) 16. If (a) a petition in bankruptcy is filed by the Publisher, or (b) a petition in bankruptcy is filed against the Publisher and such petition is finally sustained, or (c) a petition for arrangement is filed by the Publisher, or a petition for reorganization is filed by or against her Publisher, and an order is entered directing the liquidation of the Publisher as in bankruptcy, or (d) the Publisher makes an assignment for the benefit of creditors, or (e) the Publisher liquidates its business for any cause whatever, the Author may terminate this Agreement by written notice and thereupon all rights granted him/her hereunder shall revert to him/her.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

The Author

By _____
Title:

FANTAGRAPHICS BOOK INC.

By _____
Title: President