THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FANTAGRAPHICS BOOKS, INC., | No. 2:21-cv-00802-JCC |
| Plaintiff, | ANSWER TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT; COUNTERCLAIM FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT |
| v. | |
| EMIL FERRIS, | |
| Defendant. | |

EMIL FERRIS,

Counter-Claimant,

v.

FANTAGRAPHICS BOOKS, INC.,

Counter-Defendant.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  206.359.8000
Fax:  206 359.9000

1    This case involves a publisher, Fantagraphics, bullying its breakout star author, Emil Ferris,

2    into giving it a second book to which it is not entitled. The purpose of Fantagraphics suit is clear:

3    Fantagraphics knows Ms. Ferris, an individual author and artist, will struggle to pay legal fees for

4    this litigation. Every dollar she spends here comes directly out of her personal pocket.

5    Fantagraphics is betting this extra pressure will force Ms. Ferris to give in to its demands before it

6    is held accountable for its own breaches.

7    Fantagraphics has been taking advantage of Ms. Ferris for years. As early as 2017 she

8    began noticing anomalies with her royalty reports. She later learned that Fantagraphics is selling

9    English-language books in 13 countries outside the rights granted to it in the Publishing

10   Agreement. It has consistently underreported and underpaid her royalties even on authorized sales.

11   When she asked questions, Fantagraphics patronized her and deflected the requests. And when she

12   requested an audit—as is her right under their agreement—Fantagraphics stalled and stonewalled.

13   Fantagraphics desperately wants Ms. Ferris' next book. By its own admission, it has been

14   advertising the book for years. At first, Ms. Ferris simply had difficulty finishing the work while

15   juggling promotional events that Fantagraphics asked her to attend, which included a grueling

16   series of international tours, comic cons, and interviews. But later, Ms. Ferris suspected that

17   Fantagraphics was lying to her and underpaying her. She requested an audit to investigate these

18   issues and has been clear with Fantagraphics that she would only discuss the terms for publication

19   of Book 2 (if at all) after the accounting and resolution of any issues it uncovers. The shortest path

20   for Fantagraphics to Book 2 was to allow the auditors Ms. Ferris hired to review Fantagraphics'

21   records as the contract stipulates. If the audit revealed no issues, Ms. Ferris' concerns would have

22   been settled and the parties could have moved on. Instead, Fantagraphics fought the audit then

23   filed this lawsuit.

24

25

26

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

The parties' existing contract, on its face, covers only one book. Though Ms. Ferris always intended there would be a second book and the parties discussed and planned for it, they never negotiated the terms around its release. And after four years of Fantagraphics' breaches and obfuscation, Ms. Ferris is no longer comfortable moving forward without a full accounting, and sufficient additional contractual assurances and reinforcement to protect her in the event Fantagraphics pulls the same tricks with Book 2.

For these and the other reasons set out below, Ms. Ferris requests that the Court hold Fantagraphics accountable by ruling in Ms. Ferris' favor on her affirmative claims as well as Fantagraphics' Declaratory Judgment claim.

## I.    ANSWER

Ms. Ferris denies, except where expressly admitted, each allegation in the Complaint. Ms. Ferris includes the headings used in the Complaint for convenience and ease of reference only and denies any allegations, assertions, or inferences contained therein.

1.    Ms. Ferris denies that Fantagraphics has a legal right to publish Book 2 of MY FAVORITE THING IS MONSTERS ("Monsters Book 2"). Ms. Ferris further denies that she submitted Monsters Book 2 for publication and agreed by contract to that publication. Ms. Ferris lacks sufficient information to admit or deny the remaining allegations in paragraph 1 and on that basis denies them.

2.    Ms. Ferris admits that the publication of MY FAVORITE THING IS MONSTERS Book 1 ("Monsters Book 1") has generated royalties for her, although these royalty payments are significantly less than what Ms. Ferris is entitled to per the parties' Publishing Agreement. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 2.

3.    Ms. Ferris admits that Gary Groth is the publisher and editor of Monsters Book 1. Ms. Ferris admits that Holly Bemiss was her literary agent during part of the time relevant to this case. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 3.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

4.     The correspondence referenced in paragraph 4 speaks for itself. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 4.

## II.     THE PARTIES

5.     Ms. Ferris lacks sufficient information to admit or deny the allegations in this paragraph and on that basis denies them.

6.     Ms. Ferris denies that Monsters Book 1 is her only published book. Ms. Ferris admits the remaining allegations in paragraph 6.

## III.     JURISDICTION AND VENUE

7.     Ms. Ferris admits that this Court has jurisdiction over this action. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 7.

## IV.     UNDERLYING FACTS

8.     Ms. Ferris denies any suggestion that the Publishing Agreement covers two books. The Parties understood that the Publishing Agreement covered only one book—Monsters Book 1. To the extent they agreed to publish Monsters Book 2, that work would require a separate publishing agreement. Ms. Ferris admits that Ms. Bemiss submitted to Mr. Groth, on Ms. Ferris' behalf, a manuscript for Monsters and that she did so on or around August 2015. Ms. Ferris lacks sufficient information to admit or deny the remaining allegations in paragraph 8 and on that basis denies them.

9.     Ms. Ferris admits that she intended to write a Monsters Book 2 and, in the early days before the relationship soured, hoped that Fantagraphics would publish it. Ms. Ferris denies that the Publishing Agreement covers two books. Had the parties so intended, they could easily have amended the agreement to reflect Fantagraphics' commitment to Monsters Book 2. Keeping the agreement vague benefited Fantagraphics because it gave the company room to back out if the first book had been unsuccessful. The statement excerpted in paragraph 9 speaks for itself. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 9.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

10.    Ms. Ferris admits that Fantagraphics published Monsters Book 1 in February 2017 with Ms. Ferris' consent. Ms. Ferris admits that the title page of Monsters Book 1 includes the following text: "My Favorite Thing Is Monsters Book One." Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 10.

11.    The text referenced in paragraph 11 speaks for itself. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 11.

12.    Paragraph 12 states legal conclusions to which no response is required. To the extent a response is required, Ms. Ferris denies the allegations in paragraph 12.

13.    Ms. Ferris denies that the Publishing Agreement applies to Monsters Book 2. Ms. Ferris denies that Monsters Book 2 is "the second half of the manuscript Ms. Ferris submitted in 2015." Ms. Ferris denies that there was any contractually imposed publication date for Monsters Book 2. To the extent that Ms. Ferris made any representations regarding target submission timeframes for Monsters Book 2, those representations are not evidence of a binding legal agreement. They are simply an indication that at the time, unaware of Fantagraphics burgeoning and multiple breaches of the Publishing Agreement, Ms. Ferris was interested in having Fantagraphics publish Monsters Book 2 if suitable terms could be reached. Ms. Ferris lacks sufficient information to admit or deny the remaining allegations in paragraph 13 and on that basis denies them.

14.    To the extent Fantagraphics was granting pre-release licenses to Monsters Book 2, Ms. Ferris did not understand those licenses to be part of the Publishing Agreement. To the extent Ms. Ferris accepted payments attributable to Monsters Book 2, she did so with the understanding that those payments were not covered by the Agreement. Ms. Ferris lacks sufficient information to admit or deny the remaining allegations in paragraph 14 and on that basis denies them.

15.    Ms. Ferris denies that there was any contractually imposed publication date for Monsters Book 2. To the extent Ms. Ferris made any representations regarding target submission timeframes for Monsters Book 2, those representations are not evidence of a binding legal

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1  agreement. They are simply an indication that at the time, unaware of Fantagraphics burgeoning

2  and multiple breaches of the Publishing Agreement, Ms. Ferris was interested in having

3  Fantagraphics publish Book 2 if suitable terms could be reached. Ms. Ferris admits that, very early

4  in her process writing Monsters Book 2, she used the word "polish," but that in no way suggested

5  Monsters Book 2 was covered by the Agreement or Fantagraphics otherwise had any right to

6  publish it. And Ms. Ferris communicated that she was in the process of writing Monsters Book 2

7  and that any remnant of Monsters Book 1 in Fantagraphics' possession would not necessarily be a

8  part of Monsters Book 2. Ms. Ferris denies the remaining allegations in paragraph 15.

9     16. Ms. Ferris denies that Book 2 was already complete and denies that Book 2 was

10  under the existing Publishing Agreement. Ms. Ferris denies that there was any contractually

11  imposed publication date for Monsters Book 2. To the extent Ms. Ferris made any representations

12  regarding target submission timeframes for Monsters Book 2, those representations are not

13  evidence of a binding legal agreement. They are simply an indication that at the time, unaware of

14  Fantagraphics burgeoning and multiple breaches of the Publishing Agreement, Ms. Ferris was

15  interested in having Fantagraphics publish Book 2 if suitable terms could be reached. Ms. Ferris

16  denies the remaining allegations in paragraph 16.

17     17. Ms. Ferris denies that there was any contractually imposed publication date for

18  Monsters Book 2. To the extent Ms. Ferris made any representations regarding target submission

19  timeframes for Monsters Book 2, those representations are not evidence of a binding legal

20  agreement. They are simply an indication that at the time, unaware of Fantagraphics burgeoning

21  and multiple breaches of the Publishing Agreement, Ms. Ferris was interested in having

22  Fantagraphics publish Book 2 if suitable terms could be reached. Ms. Ferris lacks sufficient

23  information to admit or deny the remaining allegations in paragraph 17, and on that basis denies

24  them.

25     18. Ms. Ferris denies that there was any contractually imposed publication date for

26  Monsters Book 2. To the extent Ms. Ferris made any representations regarding target submission

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  timeframes for Monsters Book 2, those representations are not evidence of a binding legal

2  agreement. They are simply an indication that at the time, unaware of Fantagraphics burgeoning

3  and multiple breaches of the Publishing Agreement, Ms. Ferris was interested in having

4  Fantagraphics publish Monsters Book 2 if suitable terms could be reached. Ms. Ferris lacks

5  sufficient information to admit or deny the remaining allegations in paragraph 18, and on that basis

6  denies them.

7       19.    Ms. Ferris denies that there was any contractually imposed publication date for

8  Monsters Book 2. To the extent Ms. Ferris made any representations regarding target submission

9  timeframes for Monsters Book 2, those representations are not evidence of a binding legal

10  agreement. They are simply an indication that at the time, unaware of Fantagraphics burgeoning

11  and multiple breaches of the Publishing Agreement, Ms. Ferris was interested in having

12  Fantagraphics publish Monsters Book 2 if suitable terms could be reached. Ms. Ferris lacks

13  sufficient information to admit or deny the remaining allegations in paragraph 19, and on that basis

14  denies them.

15       20.    Ms. Ferris denies that there was any contractually imposed publication date for

16  Monsters Book 2. To the extent Ms. Ferris made any representations regarding target submission

17  timeframes for Monsters Book 2, those representations are not evidence of a binding legal

18  agreement. They are simply an indication that at the time, unaware of Fantagraphics burgeoning

19  and multiple breaches of the Publishing Agreement, Ms. Ferris was interested in having

20  Fantagraphics publish Monsters Book 2 if suitable terms could be reached. Ms. Ferris lacks

21  sufficient information to admit or deny the remaining allegations in paragraph 20, and on that basis

22  denies them.

23       21.    Ms. Ferris admits that her progress on Monsters Book 2 was hampered at times by

24  her mental and/or physical health, the grueling publicity schedule Fantagraphics demanded for

25  Monsters Book 1, Ms. Ferris' efforts to assist with the foreign language versions of Monsters Book

26  1, a defective computer and on her need to generate other income. It was also based on Ms. Ferris'

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1   growing distrust for Fantagraphics and her concerns about the way Fantagraphics was treating her.

2   Ms. Ferris does not recall when she, her agent, or her attorneys first denied that Monsters Book 2

3   is covered by the Publishing Agreement. As explained more fully below in Ms. Ferris'

4   counterclaims, as time progressed Ms. Ferris became increasingly suspicious that Fantagraphics

5   was underpaying her and lying about the revenue it was gaining from Monsters Book 1. When Ms.

6   Ferris requested an audit under Section 9 of the Publishing Agreement, which she was entitled to

7   do, Fantagraphics refused to open its books to her. The friction between Ms. Ferris and

8   Fantagraphics has imposed and continues to impose a significant toll on Ms. Ferris—financially

9   and mentally—that has impacted her progress on Monsters Book 2. Ms. Ferris lacks sufficient

10  information to admit or deny the remaining allegations in paragraph 21, and on that basis denies

11  them.

12      22.     Ms. Ferris denies that any of the correspondence cited in paragraph 22—to the

13  extent that correspondence is accurately transcribed—confirms Fantagraphics' "rendition of the

14  facts." It shows only that the parties thought for a time that Fantagraphics would publish Book 2

15  but is silent as to the terms of that publication. In addition, the cited correspondence confirms that

16  Monsters Book 1 and Monsters Book 2 are independent works, and that Monsters Book 2 was not

17  yet completed. Only one book, Monsters Book 1, was covered by the Publishing Agreement.

18      23.     Ms. Ferris denies that any of the correspondence cited in paragraph 23—to the

19  extent that correspondence is accurately transcribed—supports Fantagraphics' allegation that the

20  Publishing Agreement covers Monsters Book 2. Ms. Ferris lacks sufficient information to admit

21  or deny the remaining allegations in paragraph 23, and on that basis denies them.

22      24.     Ms. Ferris admits that her lawyers sent the communication referenced in paragraph

23  24. That letter, which is clearly marked "CONFIDENTIAL FOR SETTLEMENT PURPOSES

24  ONLY (FRE 408)," is protected by Federal Rule of Evidence 408, and not admissible to "prove

25  or disprove the validity" of any claim. As such, paragraph 24 should be stricken in its entirety. *See*

26  *Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHS-GMS, 2011

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

WL 1770784, at *9 (D. Ariz. May 10, 2011). Separately, Ms. Ferris denies that the correspondence cited in paragraph 24 supports Fantagraphics' allegation that the Publishing Agreement covers Monsters Book 2. Ms. Ferris denies that the word "sequel" was never before mentioned by the parties—Ms. Ferris repeatedly used the word "sequel" to describe Monsters Book 2. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 24.

25.     Ms. Ferris admits that her lawyers sent the communication referenced in paragraph 25. That letter, which is clearly marked "CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY (FRE 408)," is protected by Federal Rule of Evidence 408, so is not admissible to "prove or disprove the validity" of any claim. As such, paragraph 25 should be stricken in its entirety. *See Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHS-GMS, 2011 WL 1770784, at *9 (D. Ariz. May 10, 2011). Separately, Ms. Ferris denies that the correspondence referenced in paragraph 25 supports Fantagraphics' allegation that the Publishing Agreement covers Monsters Book 2. Ms. Ferris denies that the word "sequel" was never used to describe Monsters Book 2. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 25.

26.     Ms. Ferris admits that her lawyers sent the communication described in paragraph 26. That letter, which is clearly marked "CONFIDENTIAL FOR SETTLEMENT PURPOSES ONLY (FRE 408)," is protected by Federal Rule of Evidence 408, and not admissible to "prove or disprove the validity" of any claim. As such, paragraph 26 should be stricken in its entirety. *See Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHS-GMS, 2011 WL 1770784, at *9 (D. Ariz. May 10, 2011). Separately, Ms. Ferris denies that the correspondence referenced in paragraph 26 supports Fantagraphics' allegation that the Publishing Agreement covers Monsters Book 2. Except as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 26.

27.     Ms. Ferris admits that her lawyers sent the communication referenced in paragraph 27. That letter, which is clearly marked "CONFIDENTIAL FOR SETTLEMENT PURPOSES

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1  ONLY (FRE 408)," is protected by Federal Rule of Evidence 408, and not admissible to "prove

2  or disprove the validity" of any claim. As such, paragraph 27 should be stricken in its entirety. *See*

3  *Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHS-GMS, 2011

4  WL 1770784, at *9 (D. Ariz. May 10, 2011). Separately, Ms. Ferris denies that the correspondence

5  referenced in paragraph 27—as excerpted incompletely and without context in that paragraph—

6  supports Fantagraphics' allegation that the Publishing Agreement covers Monsters Book 2. Except

7  as expressly admitted, Ms. Ferris denies the remaining allegations in paragraph 27.

8      28.     Ms. Ferris admits that her lawyers sent the communication described in paragraph

9  28. That letter, which is clearly marked "CONFIDENTIAL FOR SETTLEMENT PURPOSES

10  ONLY (FRE 408)," is protected by Federal Rule of Evidence 408, and not admissible to "prove

11  or disprove the validity" of any claim. As such, paragraph 28 should be stricken in its entirety. *See*

12  *Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHS-GMS, 2011

13  WL 1770784, at *9 (D. Ariz. May 10, 2011). Separately, Ms. Ferris denies that the correspondence

14  referenced in paragraph 28—as excerpted incompletely and without context in that paragraph—

15  supports Fantagraphics' allegation that the Publishing Agreement covers Monsters Book 2. Ms.

16  Ferris lacks sufficient information to admit or deny the remaining allegations in paragraph 28, and

17  on that basis denies them.

18      29.     Ms. Ferris lacks sufficient information to admit or deny the remaining allegations

19  in paragraph 29, and on that basis denies them.

20      30.     Ms. Ferris denies that any material in Fantagraphics possession constitutes "the

21  second half of MONSTERS." Ms. Ferris denies that she submitted "the second half of

22  MONSTERS" for publication in 2015. Ms. Ferris denies that the Publishing Agreement authorizes

23  Fantagraphics to publish Monsters Book 2. Ms. Ferris denies that her consistent representations

24  over many years that the Publishing Agreement does not cover Monsters Book 2 constitute a "last-

25  minute claim." Ms. Ferris lacks sufficient information to admit or deny the remaining allegations

26  in paragraph 30, and on that basis denies them.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1

**CAUSE OF ACTION FOR DECLARATORY JUDGMENT**

2       31.     In answering paragraph 31, Ms. Ferris incorporates by reference her responses to

3   paragraphs 1–30 above. Except as specifically admitted, Ms. Ferris denies the remaining

4   allegations in paragraph 1–30.

5       32.     Paragraph 32 states legal conclusions to which no response is required. To the

6   extent a response is required, Ms. Ferris admits the allegations in paragraph 32.

7       33.     Ms. Ferris denies the allegations in paragraph 33.

8

**RESPONSE TO PRAYER FOR RELIEF:**

9

10   Ms. Ferris denies that Plaintiff is entitled to any declarative, substantive, procedural,

punitive, statutory, or injunctive remedy or relief, including the relief referenced in Plaintiff's

11   "Prayer for Relief" section of the Complaint, or any other relief whatsoever.

12

13

**JURY TRIAL DEMAND**

14   Ms. Ferris denies that Plaintiff is entitled to a trial by jury on its declaratory judgment

15   claim.

16

17

18

19

20

21

22

23

24

25

26

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 11

1

### DEFENSES AND AFFIRMATIVE DEFENSES

2

Ms. Ferris further responds to the Complaint by alleging the following defenses and

3

affirmative defenses without assuming the burden of proof where such a burden is otherwise on

4

the Plaintiff pursuant to applicable substantive or procedural law.

5

1.      The harm alleged in the Complaint is not covered under the terms of the Publishing

6

Agreement.

7

2.      Plaintiff's claims are barred by Plaintiff's material misrepresentations.

8

3.      Plaintiff's claims are barred by Ms. Ferris' good faith conduct.

9

4.      Plaintiff's claims are barred by bad faith conduct of Plaintiff.

10

5.      Plaintiff's claims are barred by the unclean hands of Plaintiff.

11

6.      Plaintiff's claims are barred by Plaintiff's own breach of contract or obligations to

12

Ms. Ferris.

13

7.      Plaintiff's claims are barred by the doctrine of fraud.

14

8.      Plaintiff's requested relief—essentially specific performance of a Contract that

15

does not say what Plaintiff alleges it says—would violate the U.S. Constitution.

16

### Reservation of Defenses

17

9.      Ms. Ferris reserves the right to amend and/or supplement her Answer to assert any

18

and all pertinent defenses ascertained through further investigation and discovery of this action.

19

Ms. Ferris will rely on all defenses that may become available during discovery or trial.

20

**WHEREFORE**, Ms. Ferris requests that the Court find in her favor on Plaintiff's

21

declaratory judgment claim; that judgment be entered against Plaintiff in connection with its

22

Complaint; that judgment be entered in favor of Ms. Ferris; and that Ms. Ferris be awarded such

23

other and further relief as the Court deems appropriate.

24

25

26

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1

**COUNTERCLAIMS**

2      Ms. Ferris brings these counterclaims for breach of contract and declaratory judgment to

3   get an accounting, recover what she is owed under the Publishing Agreement, and clarify formally

4   that Fantagraphics has no rights to publish anything from Ms. Ferris except Monsters Book 1. In

5   alleging these counterclaims, Ms. Ferris incorporates by reference her responses to paragraphs 1–

6   30 above. Ms. Ferris further alleges as follows:

7

**PARTIES**

8      1.      Counterclaimant Emil Ferris is an individual who resides and is domiciled in the

9   state of Illinois.

10     2.      On information and belief, counterdefendant Fantagraphics Books, Inc., is a

11  Washington State corporation with its principal place of business within the Western District of

12  Washington.

13

**JURISDICTION & VENUE**

14     3.      This is an action for breach of contract under Washington state law and declaratory

15  judgment under 28 U.S.C. § 2201(a).

16     4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

17  § 2201(a) and 28 U.S.C. § 1331.

18     5.      Venue for the counterclaims is proper in this District pursuant to 28 U.S.C.

19  § 1391(b) because counterdefendant Fantagraphics is a resident of this district.

20

**FACTUAL BACKGROUND**

21  **A.      *My Favorite Thing Is Monsters* Book 1 Was an Instant Success.**

22     6.      Monsters Book 1 is a graphic novel that tells the story of ten-year old Karen Reyes'

23  effort to investigate the death of her beloved neighbor, Anka, a holocaust survivor. Anka's death

24  was ruled a suicide, but Karen is convinced Anka was murdered. This "whodunnit" storyline is set

25  against the social turmoil of 1960s Chicago. It is also a coming of age story told through Karen's

26  notebook, where Karen documents clues to Anka's death. Karen illustrates the pages of her

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1  notebook, drawing herself as a werewolf and depicting those with whom she comes in contact as
2  monsters. Karen's investigation of Anka's death requires her to confront individual and state-
3  sponsored evil, antisemitism, racism, homophobia, and misogyny. Karen also takes the reader back
4  in time to Anka's experiences as a holocaust victim.

5       7.       Monsters Book 1 is a work of art. Ms. Ferris eschews the panel storytelling format
6  that is typical of graphic novels in favor of intricate, delicate, and detailed full-page pen and ink
7  drawings. Every image and word are hand drawn by Ms. Ferris. *See, e.g.*, Figure 1.

8       *Figure 1*



© Emil Ferris

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

8.      Monsters Book 1 is Ms. Ferris' first published work of any kind and is an astounding achievement for Ms. Ferris professionally and personally. Ms. Ferris overcame great personal challenges to complete Monsters Book 1. At the age of 40, Ms. Ferris contracted West Nile virus and experienced partial paralysis. It took Ms. Ferris many years to recover, and to this day she does not have full dexterity in her drawing hand. Ms. Ferris started working on Monsters Book 1 during her recovery from West Nile virus while she was a student at the School of the Art Institute of Chicago. The book took Ms. Ferris more than five years to complete.

9.      At completion, the original manuscript for Monsters was more than 600 pages long. But Ms. Ferris knew the 600-page manuscript did not include the true end to Karen's story. She anticipated writing a second book that would complete Karen's narrative.

10.     In 2015 and 2016, Ms. Ferris worked with a literary agent, Holly Bemiss, to publish Monsters Book 1. The publisher was Gary Groth of Fantagraphics. Ms. Ferris and Fantagraphics signed the Publishing Agreement on January 13, 2016. *See* Exhibit A.

11.     Ms. Ferris performed her obligation under the Publishing Agreement by delivering Monsters Book 1 to Fantagraphics in time for a 2016 publication. Ex. A § 5. The original publication date for Monsters Book 1 was October 2016, to coincide with Halloween, but shipping delays pushed out the publication date until early 2017.

12.     Monsters Book 1 was finally published on February 14, 2017.[1] Fantagraphics ordered an initial print run of 10,000 copies, with 30,000 reprints in April 2017. For Fantagraphics, this was "the largest [reprint order] in company history."[2] Fantagraphics ordered a third printing of 25,000 books and a fourth printing of 17,000 books.

13.     Monsters Book 1 was enormously successful. It appeared on the *Publishers Weekly* graphic novel best seller list and was included on the New York Times "Times Critics' Top Books

---

[1] Ferris holds a copyright registration for Monsters Book 1. The registration number is TX 8-960-229.

[2] Sharon Kennedy Wynne, *Defying the norms of graphic novels, 'My Favorite Thing is Monsters' dazzles critics of all stripes,* TAMPA BAY TIMES (May 16, 2017), https://www.tampabay.com/features/books/defying-the-norms-of-graphic-novels-my-favorite-thing-is-monsters-dazzles/2324115/.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 15

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

1   of 2017."[3] Ms. Ferris was featured on NPR's "Fresh Air" with Terry Gross, and Art Spiegelman,

2   creator of *Maus*, called her "one of the most important comic artists of our time."[4] Ms. Ferris and

3   the book received many awards, including 2017 Ignaz Awards for "Outstanding Artist" and

4   "Outstanding Graphic Novel;" and three Eisner Awards for "Best Graphic Album—New," "Best

5   Writer/Artist," and "Best Coloring." Ms. Ferris received awards abroad as well, including a 2020

6   Max and Moritz award in Germany (Germany's top award for graphic novels), a 2019 Fauve d'Or

7   "Best Graphic Novel" award in France, and a 2018 Gran Guinigi "Best Graphic Novel" award in

8   Italy. Ferris was recognized with, among other awards and honors, a residency at the Louvre in

9   2019. She was also named a Guggenheim Fellow in 2021.

10        **B.      Monsters Book 2 Is Not Covered by the Publishing Agreement.**

11        14.     Holly Bemiss, Ms. Ferris' agent, sent Fantagraphics the entire 600-page manuscript

12   for Monsters Book 1 in 2016. Ms. Ferris always intended Monsters would be a two-book series.

13   But Fantagraphics contractually agreed to publish only a single book, and Ms. Ferris worked to

14   trim the 600-page manuscript into Monsters Book 1. Notably, Fantagraphics did not simply cut

15   the manuscript in half and publish only the first portion. If it had, it would not have waited four

16   years for Ms. Ferris to deliver Monsters Book 2—it would already have had Monsters Book 2. The

17   remnant pages left over from Monsters Book 1 are not Monsters Book 2.

18        15.     Fantagraphics' threats to publish these remnants would clearly violate Ms. Ferris'

19   copyrights and are a transparent effort to bully Ms. Ferris into giving them what they want but

20   cannot legally claim. Publishing this draft work would also violate Ferris' artistic integrity and

---

[3] Dwight Garner et. al., *Times Critics' Top Books of 2017*, N. Y. TIMES (Dec. 7, 2017), https://web.archive.org/web/20180105180348/https://www nytimes.com/2017/12/07/books/critics-favorite-books-2017.html.

[4] Nat'l Pub. Radio, *In 'Monsters,' Graphic Novelist Emil Ferris Embraces the Darkness Within* (March 30, 2017), https://www.npr.org/2017/03/30/522034367/in-monsters-graphic-novelist-emil-ferris-embraces-the-darkness-within; Dana Jennings, *First, Emil Ferris Was Paralyzed. Then Her Book Got Lost At Sea*, N.Y. TIMES (Feb. 17, 2017), https://www.nytimes.com/2017/02/17/arts/design/first-emil-ferris-was-paralyzed-then-her-book-got-lost-at-sea html.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

1  damage her reputation as a writer. Separately, forcing her to work with Fantagraphics to write and

2  publish Book 2 would violate the U.S. Constitution.[5]

3       16.    At the time the agreement was entered, Fantagraphics did not commit to a two-book

4  deal, nor would it have been expected to—Ms. Ferris was a first-time author with an unproven

5  record. After the parties entered the agreement, they began to discuss publishing a second volume

6  together, but they never amended the existing contract or entered a new one for Monsters Book 2

7  to bind each other legally.

8       17.    The Publishing Agreement does not cover two books—it simply does not say what

9  Fantagraphics wants it to say. The Agreement defines book in the singular, Ex. A § 1(a), and it

10  indicates that the period of agreement continues "as long as the **book**" is in print. *Id.* § 2. It

11  references "**the Book**" throughout—in singular.

12       18.    The Publishing Agreement also includes only one delivery date and one publication

13  date. *Id.* § 5. It says that Ms. Ferris will deliver "The Work to be included in the Book according

14  to a mutually agreed upon schedule." *Id.* The Work—singular—will be published "within 24

15  months of the date of this Agreement." *Id.* If the Publishing Agreement covered two books, as

16  Fantagraphics contends, it would specify two delivery dates and a schedule that envisioned two

17  publishing dates.

18       19.    The Publishing Agreement also provides for only one, $12,000 advance against

19  royalties, which again would not make sense if the Agreement covered two separate books. Ex. A

20  § 4(a).

21       20.    Importantly, the Publishing Agreement never mentions a "Book 2," "Volume 2," a

22  Monsters sequel, or any subsequent work.

---

[5] Specific performance of contracts is disfavored given the Constitutional concerns prohibiting involuntary servitude. *See* RESTATEMENT (SECOND) OF CONTRACTS § 367(1) (1981) ("A promise to render personal service will not be specifically enforced . . ."); *see also* Randy E. Barnett, CONTRACTS: CASES AND DOCTRINE 224–30 (3d ed. 2003) (discussing specific performance and the Thirteenth Amendment); JOHN D. CALAMARI & Joseph M. Perillo, THE LAW OF CONTRACTS 617 (4th ed. 1998) (same); Howard O. Hunter, MODERN LAW OF CONTRACTS ¶ 6.05, at 6-27 to -30 (1986) (same).

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

21.     The Publishing Agreement requires that any amendments to the Agreement be in writing and signed by both parties. Ex. A § Misc. (c). Clearly the parties did not memorialize any of the specifics with regard to Monsters Book 2 that would form the basis for a binding publishing agreement.

22.     The Publishing Agreement also contains a merger clause, which provides that the "Agreement contains the entire understanding of the parties with respect to its subject matter. Any and all representations or agreements by any agent or representative of either party to the contrary shall be of no effect." Ex. A § Misc. (e).

23.     Contemporaneous evidence confirms that the Publishing Agreement covered only one book, Monsters Book 1.

24.     Ms. Ferris had discussions with her agent, Holly Bemiss, about Monsters Book 2 around the time the Parties entered into the Publishing Agreement for Monsters Book 1. Ms. Bemiss stated that Fantagraphics would treat Ms. Ferris fairly in publishing Monsters Book 1 in part to ensure Ms. Ferris would ultimately agree to allow Fantagraphics to publish Monsters Book 2 as well.

25.     On information and belief, Fantagraphics knew that the Monsters Book 1 remnant was not Monsters Book 2, and that Monsters Book 2 did not exist at the time the Parties signed the Publishing Agreement. For example, Ms. Ferris launched a GoFundMe Campaign three days after the original publication date for Monsters Book 1 in November 2016 to raise money for drafting Monsters Book 2. In exchange for a donation, Ms. Ferris offered to draw donors as minor characters in Monsters Book 2.[6] Fantagraphics knew about the GoFundMe page and therefore understood that Monsters Book 2 was still incomplete in the fall of 2016.

26.     In addition, emails from 2017 through late 2018 between Ms. Ferris, Ms. Bemiss, and Fantagraphics confirm that Fantagraphics understood Monsters Book 2 was not yet finished.

---

[6]     Emil   Ferris,   *You   Can   Be   In   My   Graphic   Novel!*,   GOFUNDME, https://www.gofundme.com/f/beinagraphicnovel.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

1    For instance, on May 23, 2018, Mr. Groth told Ms. Ferris that they could not list Monsters Book

2    2 in their catalogue until it was "100% done" and that "waiting until an author finishes the book"

3    was "standard practice." He confirmed in the same email his understanding that Ms. Ferris' work

4    on Book 2 involved more than polishing. He wrote: "If you'd like any feedback regarding the

5    narrative, the plot, page sequencing, etc., please let me know." And, on October 15, 2018, Ms.

6    Bemiss wrote to Mr. Groth: "Emil (cc'd here) and I were wondering why this statement dated

7    2/5/2018 attached below records the sale of My Favorite Thing is Monsters Book 2? We find this

8    curious as Book 2 does not presently exist." In 2020, Ms. Ferris again emailed Fantagraphics

9    asking "why on this statement you have sent me that is dated 02-19-2020, do I see something

10   called Book2 being sold by you when I have not authorized the sale of anything called Book2?"

11   Ms. Ferris reminded Fantagraphics that "our contract does not include any provision for a 'Book

12   2'" and asked them to cancel all payments she had received for "Book 2."

13          27.     Ms. Ferris's interviews and social media posts document the struggles she has had

14   completing Monsters Book 2. In an October of 2017 interview, in response to a question regarding

15   whether Monsters Book 2 would be published in March of 2018, she stated that "God willing" it

16   would come out the following year. In an October of 2020 interview, Ms. Ferris stated that she

17   had experienced disappointments while writing Monsters 2 that gave her "writers block." As

18   recently as January 2021, Ms. Ferris shared on her Instagram: "unfortunately there is no second

19   book at this time and consequently nobody should be taking money from anyone . . ." in exchange

20   for Monsters Book 2.

21          28.     Consistent with these statements, Ms. Ferris has continued to work on Monsters

22   Book 2 over the past four years. She originally hoped to deliver the finished book to Fantagraphics

23   in 2017, but the process of crafting, writing, and drawing the end to Karen's story has taken

24   Ms. Ferris longer than anticipated. Fantagraphics also demanded Ms. Ferris spend her time

25   promoting Monsters Book 1, which took her away from writing Monsters Book 2. For example,

26   Ms. Ferris travelled for six international book tours; sat for dozens of radio and newspaper

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1   interviews; and attended in-person book signings and events, all of which took a substantial
2   amount of Ms. Ferris' time. Ms. Ferris was also required to prepare Monsters Book 1 for foreign
3   sales, which included redrawing significant portions of the book to properly remove embedded
4   text for translation. The time she spent promoting Monsters Book 1 and preparing it for foreign
5   sales was time she did not spend writing Monsters Book 2. Ms. Ferris also has lingering mobility
6   issues associated with West Nile virus, including ongoing partial paralysis in her right hand, that
7   limit the hours she can work each day.

8       29.     Her significant challenges trying to get an accounting from Fantagraphics have
9   further slowed her progress. Ms. Ferris is informed and believes that Fantagraphics has persistently
10  underpaid her royalties on Monsters Book 1, requiring Ms. Ferris to pick up odd jobs to support
11  herself and her daughter. This took away from the time she could commit to Monsters Book 2. In
12  addition, Fantagraphics' publishing errors on foreign language versions of Monsters Book 1
13  required Ms. Ferris to dedicate substantial time to those volumes, again, taking her away from
14  finishing Monsters Book 2. Nevertheless, as a sign of good faith that she was working on Monsters
15  Book 2, Ms. Ferris provided Fantagraphics with approximately 40 non-sequential pages of the
16  work. To date, Ms. Ferris is still drafting Monsters Book 2 and has not delivered it to Fantagraphics
17  for publication.

18      30.     Despite not having Monsters Book 2 in hand, and despite not having the contractual
19  rights to Monsters Book 2, Fantagraphics has already sold copies of the book. Ms. Ferris
20  discovered this when examining her royalty statements. Ms. Ferris has refused payments from
21  Fantagraphics for Monsters Book 2, including pre-sale payments from Amazon.com, because
22  Monsters Book 2 is not complete, and Ms. Ferris has not yet determined whether Fantagraphics
23  will be its publisher.

24      31.     Ms. Ferris' understanding is and has always been that Monsters Book 2 was not
25  covered by the Publishing Agreement.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**C.** **Fantagraphics Breached the Publishing Agreement.**

2

32.    The 2016 Publishing Agreement governs Ms. Ferris and Fantagraphics' rights

3

regarding publication and distribution of Monsters Book 1.

4

33.    Ms. Ferris performed under the Publishing Agreement by delivering Monsters

5

Book 1 to Fantagraphics in time for a 2016 publication date. Ex. A § 5. Fantagraphics has not

6

performed its ongoing obligations. Rather, it breached the Publishing Agreement by underpaying

7

Ms. Ferris royalties, sending late and incomplete royalty statements, distributing Monsters Book

8

1 outside of the permitted geographic territory, and obstructing Ms. Ferris' legal right to audit its

9

records.

10

**1.** **Fantagraphics Underpays Ms. Ferris Royalties**

11

34.    The Publishing Agreement requires Fantagraphics to pay Ms. Ferris royalties. On

12

all copies of the book sold by Fantagraphics, Ms. Ferris earns 8% of the retail price on all copies

13

of each book up to 25,000 sold, and 10% of the retail price on all copies of each book sold in

14

excess of 25,000. Ex. A § 4. These royalty figures are "based on the Publisher's suggested retail

15

list price for the Book." *Id.*

16

35.    Shortly after Ms. Ferris began receiving royalty statements from Fantagraphics, she

17

suspected Fantagraphics was underpaying her. She first contacted Fantagraphics in 2017 by email,

18

through her agent Ms. Bemiss, to confirm its record keeping relating to payments and sales.

19

Mr. Groth responded, apparently frustrated that Ms. Ferris and Ms. Bemiss would approach him

20

with questions about Fantagraphics' accounting practices.

21

36.    Ms. Bemiss continued to press Fantagraphics for information on lower-than-

22

expected payments throughout 2018. For example, Ms. Bemiss emailed Mr. Groth in August 2018

23

explaining that Ms. Ferris would be "very disappointed--and frankly also suspicious" about a

24

25

26

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 21

1   $13,000 royalty payment following Monsters Book 1's stunning success in the first half of that

2   year (by one public estimate, retail sales of the book topped $2.8 million during that same period).[7]

3        37.    In the same exchange, Ms. Bemiss requested information from Mr. Groth regarding

4   how many books Fantagraphics sold and through what channels so Ms. Ferris could confirm the

5   amounts in the royalty statements, as was Ms. Ferris' right under the Publishing Agreement. Ex.

6   A § 9 (relating to an audit). Mr. Groth did not provide the information Ms. Ferris requested.

7        38.    The Publishing Agreement requires Fantagraphics to "keep full and accurate Book

8   of account and other documents and materials relating to this Agreement . . ." Ex. A § 9.

9   Fantagraphics has refused to tell Ms. Ferris precisely how many copies of Monsters Book 1

10   Fantagraphics has sold and at what price, instead providing her varying estimates that changed

11   depending on who at Fantagraphics was doing the reporting. Fantagraphics refusal to provide this

12   information is a breach of § 9.

13        39.    Fantagraphics likewise violated the Publishing Agreement by underpaying

14   Ms. Ferris for e-book sales. Section 3(a)(vii) of the Publishing Agreement provides that

15   Fantagraphics will pay Ms. Ferris 50% of the amount received from e-book sales. Ms. Ferris was

16   never paid more than 25% for royalties from e-book sales.  The royalty statement excerpted below

17   is just one example:

---

[7] Milton Griepp, *70,000 Copies of 'My Favorite Thing Is Monsters,'* ICv2 (May 18, 2017), https://icv2.com/articles/news/view/37545/70-000-copies-my-favorite-things-is-monsters.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

1

2

*Figure 2*

3



40.     Fantagraphics repeatedly underpaid Ms. Ferris for foreign book sales—as recently as this year, Fantagraphics sent Ms. Ferris a royalty statement showing Ms. Ferris received 15% of 70% for Italian sales (when her royalty rate is 85% of 70%). Fantagraphics ultimately corrected this error upon Ms. Bemiss' and Ms. Ferris' request, but the payment shows a larger practice of Fantagraphics manipulating and underpaying royalties.

41.     On information and belief, Fantagraphics also failed to properly account for Fantagraphics sale and licensing of the book to libraries, including online libraries such as Hoopla. This further reduced Ms. Ferris' royalty payments.

**2.     Fantagraphics Provides Late and Incomplete Statements**

42.     Fantagraphics also breached the Publishing Agreement by delivering late and incomplete royalty statements. According to Section 8(a) of the Agreement, the "accounting period" is "the first six months or last six months of the calendar year (*i.e.*, January through June, and July through September)." Further, Fantagraphics "shall furnish [Ms. Ferris], within 90 days following the end of each accounting period, an accounting of the royalties due to [Ms. Ferris] for such an accounting period." According to Section 8(c), Fantagraphics "shall pay [Ms. Ferris] and

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Agent all royalties due to [Ms. Ferris] and Agent for any accounting period at the time it renders

2    its accounting for such period."

3         43.    Fantagraphics frequently failed to abide by this schedule. For example, the below

4    royalty statement was a full four months late: Per the Publishing Agreement, the royalty statement

5    for the January 1, 2019 through June 30, 2019 accounting period should have issued by October

6    29, 2019. Instead of following this six-month schedule, Fantagraphics waited until February 2020

7    to issue a royalty statement for the entire year, January 1, 2019 through December 31, 2019,

8    effectively missing the October payment date.

9
10
11
12
13
14
15



16        44.    In addition, Ms. Ferris never received royalty statements for the three-month period

17   from July 1, 2017 through September 30, 2017, even though 2017 was the highest grossing year

18   for Monsters Book 1. Ms. Ferris has not received an explanation for these missing months, despite

19   requesting such information.

20        **3.    Fantagraphics Distributes Unauthorized Reprints.**

21        45.    Fantagraphics also authorized third parties to reprint Monsters Book 1 on demand

22   without Ms. Ferris' approval. Section 3(a)(iii) of the Publishing Agreement permits Fantagraphics

23   to "[l]icense publication of a reprint edition by another publisher," only if "approved by the

24   author." On information and belief, Fantagraphics worked with other publishers, including but not

25   limited to Ingram—a publishing and print on demand company—to publish unauthorized copies

26

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 24

1    of Monsters Book 1. On information and belief, this allowed Fantagraphics to sell Monsters Book

2    1 without providing Ms. Ferris royalties under the Publishing Agreement.

3          46.    Fantagraphics has also breached the Publishing Agreement by selling English

4    versions of Monsters Book 1 outside of the territory specified in the Publishing Agreement.

5    Fantagraphics has the right to print, publish, and sell the English version of Monsters Book 1 only

6    in the United States of America, the Philippine Republic, Canada, and the British Commonwealth.

7    Ex. A § 3(a). On information and belief, Fantagraphics violated this limitation by selling or

8    authorizing for sale English language versions of Monsters Book 1 in Spain, Mexico, Portugal,

9    Brazil, Germany, the Netherlands, the United Arab Emirates, France, Italy, Turkey, Korea, Japan,

10   and China.

11                    **4.    Fantagraphics Obstructed an Audit.**

12         47.     Fantagraphics also breached the Publishing Agreement by failing to agree to an

13   audit, as required by Section 9. Section 9 of the Publishing Agreement requires Fantagraphics to

14   "keep full and accurate Book of account and other documents and materials relating to this

15   Agreement . . ." Ex. A. § 9. It gives Ms. Ferris the right to audit Fantagraphics' books "upon giving

16   reasonable notice." *Id.* Ms. Ferris indicated to Fantagraphics as early as 2018 that she would like

17   more information about its accounting practices.

18         48.     Ms. Ferris requested multiple audits, only to be repeatedly rebuffed by

19   Fantagraphics in violation of Section 9 of the Publishing Agreement.

20         49.     In 2018, Ms. Ferris retained the Author's Guild to conduct an electronic audit, as

21   was their customary practice. Fantagraphics refused to allow electronic review and insisted instead

22   that the New York auditors fly to Seattle for an in-person review of Fantagraphics' records,

23   something the Publishing Agreement does not require.  Ms. Ferris believed this was an attempt to

24   increase the cost of the audit for her.

25         50.     Ms. Ferris attempted to move forward with an auditor on the west coast, but

26   Fantagraphics insisted on unreasonable terms in a non-disclosure agreement (NDA) and that Ms.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

Ferris herself sign an NDA, something that Section 9 of the Publishing Agreement does not require. Most recently, Ms. Ferris demanded an audit in a letter to Fantagraphics dated January 2021. Ms. Ferris hired the accounting firm KPMG to conduct the audit, intending that KPMG would provide a thorough and objective review of Fantagraphics' accounting practices.

51.     Fantagraphics refused to grant KPMG access to its books, instead insisting on an NDA that, among other things, would prevent KPMG from disclosing to Ms. Ferris any information discovered in the audit other than whether Fantagraphics underpaid Ms. Ferris. The Publishing Agreement does not permit Fantagraphics to impose these onerous terms. In fact, the Publishing Agreement expressly allows Ms. Ferris personally to review Fantagraphics' records if she so chooses: "*The Author* or [her] duly authorized agent or representative . . . shall have the right . . . to examine . . . such Book, documents and other material, and shall be at liberty to make copies of all or any part of such Book, documents and other material." Ex. A § 9 (emphasis added).

52.     Fantagraphics' attorney—Ken Norwick—communicated directly with KPMG on the audit, doubling down on Fantagraphics' position that it would not agree to KPMG's standard audit terms (including its non-disclosure terms), and instead demanding the unreasonable NDA described above. Mr. Norwick closed his email to KPMG by demanding a mediation on the NDA, an entirely unreasonable request given that the Publishing Agreement does not provide for an NDA in the first place. Mr. Norwick's involvement had the effect of further running up Ms. Ferris' bills associated with the attempted audit. Ultimately, rather than allow the audit, Fantagraphics filed this lawsuit.

53.     The foregoing provides just a few examples of Fantagraphics breaches. Ms. Ferris expects she will uncover additional violations of the Publishing Agreement as this litigation proceeds.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

1

**CLAIMS FOR RELIEF**

2

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

3

4

54.     Ms. Ferris realleges and incorporates by reference the allegations in the preceding

5

paragraphs and her Answer to Fantagraphics' Complaint as if fully set forth herein.

6

55.     Ms. Ferris performed her obligations under the Publishing Agreement by delivering

7

Monsters Book 1 to Fantagraphics for publication.

8

56.     Fantagraphics willfully, continuously, and materially breached the Publishing

9

Agreement by engaging in the conduct described above, among other things, by:

10

    a.   Failing to keep "full and accurate" accountings of documents and materials

11

        relating to the Publishing Agreement, in violation of Section 9 of the

12

        Publishing Agreement. Ex. A § 9.

13

    b.   On information and belief, failing to account for library book sales, among

14

        others.

15

    c.   Underpaying Ms. Ferris for e-book sales, in violation of Section 3(a) of the

16

        Publishing Agreement. Ex. A § 3(a).

17

    d.   Working with other publishers to publish unauthorized copies of Monsters

18

        Book 1, in violation of Section 3(a)(iii) of the Publishing Agreement. Ex. A

19

        § 3(a).

20

    e.   Selling English versions of Monsters Book 1 outside of the specified

21

        territory, in violation of Section 3(a) of the Publishing Agreement. Ex. A

22

        § 3(a).

23

    f.   Refusing to permit an audit, as required by Section 9. Ex. A § 9.

24

    g.   Failing to pay Ms. Ferris according to the schedule laid out in Section 8 of

25

        the Publishing Agreement. Ex. A § 8.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206 359.9000

h.   Refusing to provide a royalty statement for the time period from July 1, 2017 through September 30, 2017. *Id.*

57.   As a direct and proximate result of Fantagraphics' material breaches of the Publishing Agreement, Ms. Ferris has been and will continue to be harmed, thereby entitling Ms. Ferris to compensatory damages, an order requiring the audit, fees and costs, and/or other equitable relief against Fantagraphics.

**SECOND CLAIM FOR RELIEF**
**Breach of the Covenant of Good Faith and Fair Dealing**

58.   Ms. Ferris realleges and incorporates by reference the allegations in the preceding paragraphs and in her Answer to Fantagraphics' Complaint as if fully set forth herein.

59.   Under Washington law, every contract contains "an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112–13, 323 P.3d 1036, 1041 (2014) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356, 360 (1991)). The duty requires parties to a contract to "perform the obligations imposed by their agreement in good faith." *Poulsbo Grp., LLC v. Talon Dev., LLC*, 155 Wn. App. 339, 347, 229 P.3d 906, 910 (2010) (citing *Badgett*, 116 Wn.2d at 549).

60.   Ms. Ferris formed a business relationship with Fantagraphics when it signed the Publishing Agreement. That Agreement authorized Fantagraphics to publish one book authored by Ms. Ferris: Monsters Book 1. It did not authorize Fantagraphics to publish any other works by Ms. Ferris, specifically, Monsters Book 2. Ms. Ferris reasonably expected Fantagraphics would not use the Publishing Agreement to try to extract from Ms. Ferris a work—Monsters Book 2— that is not covered by the Agreement.

61.   Fantagraphics violated the duty of good faith and fair dealing by using the Agreement, which by its plain terms covers only one book, to threaten Ms. Ferris into giving Fantagraphics something to which they're not entitled, Monsters Book 2. Fantagraphics violated

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 28

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

the duty of good faith and fair dealing by threatening to publish the remnant of Monsters Book 1 as Monsters Book 2, which would harm Ms. Ferris' reputation and artistic integrity. Fantagraphics violated the duty of good faith and fair dealing by filing this action in an attempt to coerce Ms. Ferris into giving it the rights to publish Monsters Book 2, which is not covered by the Agreement.

62.    The Agreement also obligated Fantagraphics to "keep full and accurate Book of account and other documents and materials relating to this Agreement," and give Ms. Ferris access to those records on request. Ex. A § 9. The purpose of this section was to ensure Fantagraphics' accounting practices were accurate and transparent. Ms. Ferris reasonably expected that Fantagraphics would comply with the letter and spirit of this section by agreeing to an audit without unreasonable delay and/or conditions not provided for in the Agreement. Ms. Ferris did not expect that Fantagraphics would make up excuses to thwart the audit.

63.    Fantagraphics violated the duty of good faith and fair dealing by erecting unnecessary and unreasonable barriers to the audits that Ms. Ferris requested, and to which she was entitled under the Agreement. Among other unreasonable demands, Fantagraphics insisted that KPMG agree to an expansive confidentiality term that would have prohibited KPMG from disclosing key findings from the audit to Ms. Ferris.

64.    Fantagraphics also acted in bad faith, and contrary to the spirit of transparency and cooperation, when it requested KPMG agree to a mediation over the confidentiality term, a mediation that would significantly drive up the price of the audit for Ms. Ferris. Fantagraphics further acted in bad faith by filing this lawsuit while the parties were attempting to negotiate the terms of the audit.

65.    Fantagraphics violated the duty of good faith and fair dealing by repeatedly refusing to tell Ms. Ferris precisely how many copies of Monsters Book 1 Fantagraphics sold, instead providing her with unreliable estimates.

66.    Fantagraphics' actions deprived Ms. Ferris of key benefits of her bargain under the Publishing Agreement. Fantagraphics' actions go beyond mere breach of contract and amount to

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 29

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1    bad faith and unfair dealing. Fantagraphics' has used the Publishing Agreement and its relationship

2    with Ms. Ferris in an attempt to gain power and leverage over her for Fantagraphics' benefit. This

3    violates Fantagraphics' duty of good faith and fair dealing.

4         67.     Ms. Ferris is entitled to a judgment that Fantagraphics has breached the covenant

5    of good faith and fair dealing in the Publishing Agreement, along with an injunction barring

6    Fantagraphics from any further acts that frustrate the benefits Ms. Ferris is entitled to under that

7    Publishing Agreement.

8         68.     Ms. Ferris is also entitled to recover damages caused by Fantagraphics' breach.

9                               **THIRD CLAIM FOR RELIEF**

10                                **Declaratory Judgment**

11         69.     Ms. Ferris realleges and incorporates by reference the allegations in the preceding

12    paragraphs and in her Answer to Fantagraphics' Complaint as if fully set forth herein.

13         70.     As set out above, a valid and justiciable controversy has arisen and exists between

14    Ms. Ferris and Fantagraphics regarding Monsters Book 2.

15         71.     A judicial declaration concerning these matters is necessary and appropriate at this

16    time so that Ms. Ferris can determine her rights and duties with respect to the remnants from the

17    original Monsters manuscript. Absent such a declaration, Fantagraphics will continue to

18    improperly assert that it has the right to publish Ms. Ferris' the remnants, and thereby cause Ms.

19    Ferris irreparable injury and damage. Ms. Ferris has no other adequate remedy at law.

20         72.     Accordingly, Ms. Ferris seeks a declaration that the Publishing Agreement covers

21    only Book 1 and grants Fantagraphics no rights to Monsters Book 2 and no rights to publish any

22    of the remnants from the Book 1 manuscript.

23                                **PRAYER FOR RELIEF**

24    **WHEREFORE**, Ms. Ferris prays for the following relief:

25         1.     An award to Ms. Ferris of damages, including but not limited to compensatory

26    damages, and all other damages permitted by law.

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206 359.9000

1   2.  A Declaration that Fantagraphics does not have the right to publish remnants from

2 the original Monsters manuscript nor does it have the right to publish any other pages Ms. Ferris

3 has submitted to Fantagraphics.

4   3.  A Declaration that Fantagraphics has no rights to Monsters Book 2 when it is

5 completed.

6   4.  A Declaration that Ms. Ferris has complied with her obligations under the

7 Publishing Agreement.

8   5.  An order requiring Defendants to provide Ms. Ferris with a full and complete

9 accounting with regard to Monsters Book 1 (and any unauthorized presales of Monsters Book 2),

10 including all books and records to establish the total sales through all channels and from all sources

11 for Monsters Book 1 and the royalties Ms. Ferris is owed.

12   6.  A grant of such other and further equitable or legal relief as the Court deems proper.

13         **MS. FERRIS' JURY DEMAND**

14 Ms. Ferris hereby demands a jury trial as to all issues so triable.

15

16

17

18 Dated:  August 23, 2021     By: _s/ Lauren Watts Staniar_

19             Judith B. Jennison (SBN WA 36463)
              Lauren E. Staniar (SBN WA 48741)

20             **Perkins Coie LLP**
              1201 Third Avenue, Suite 4900

21             Seattle, Washington 98101-3099
              Telephone:  206.359.8000

22             Facsimile:  206.359.9000
              JJennison@perkinscoie.com

23             LStaniar@perkinscoie.com

24             _Attorneys for Defendant and Counterclaimant_
              _EMIL FERRIS_

25

26

ANSWER AND COUNTERCLAIMS TO
PLAINTIFF'S COMPLAINT FOR
DECLARATORY JUDGEMENT
(No. 2:21-cv-00802-JCC) – 31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**CERTIFICATE OF SERVICE**

2          I certify under penalty of perjury that on August 23, 2021, I caused to be electronically

3    filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will

4    send a notification of the filing to the email addresses indicated on the Court's Electronic Mail

5    Notice List.

6          Dated:  August 23, 2021

7                                                        *s/ Lauren Watts Staniar*
                                                         Lauren Watts Staniar
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 2:21-cv-00802-JCC)