HONORABLE JOHN COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FANTAGRAPHICS BOOKS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>EMIL FERRIS,<br><br>Defendant. | No. 2:21-cv-00802-JCC<br><br>PLAINTIFF'S REPLY TO FERRIS' COUNTERCLAIMS |

Ferris' Answer to Fantagraphics' Complaint is set forth in two unnumbered and thirty numbered paragraphs. Ordinarily, no formal response by Fantagraphics to the contents of those paragraphs would be permitted. However, Ferris explicitly incorporated by reference those contents into her Counterclaims, thus requiring Fantagraphics to respond to them as part of its Reply to the Counterclaims. For maximum clarity, and to avoid repetition, Fantagraphics' Reply will first respond to the contents of her incorporated Answer, which responses will then be incorporated into Fantagraphics' specific responses to the numbered paragraphs of Ferris' Counterclaims. Also, for maximum clarity and to avoid repetition, in responding to Ferris' incorporated Answer, Fantagraphics will first set forth in the following paragraphs 1 - 43 background facts that are then incorporated by reference into Fantagraphics' responses to the numbered paragraphs of Ferris' Answer.

## **INTRODUCTION**

1.    The Complaint was based (via direct quotation) almost entirely on actual

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

verbatim excerpts from the relevant writings – mostly emails – by Ferris herself and by Holly Bemiss, her undisputed and fully disclosed agent.  The Complaint contained no evasion or doubletalk or name-calling, etc., with the goal to keep the Complaint as direct – and as civil and responsible and professional –as  possible.  This Reply will continue that effort.

2.       In contrast, alas, Ferris' Answer to that Complaint is based almost entirely on *ipse dixit* evasion, name-calling, and vitriol, with nary a single invocation of or citation to any actual evidence beyond her own (otherwise unsupported) "version" of the underlying facts. (Notably, although Ferris now claims that Fantagraphics was a "bully" and a "liar" in its dealings with her, in a March 24, 2020 "Hi All" email to five named Fantagraphics employees, including Gary Growth, she unequivocally wrote: "I send so much love to every single one of you."}.Because we believe the Court can immediately detect empty smoke and spin when it sees it, and because we decline to the bait and wallow in the vitriol Ferris has proffers, Fantagraphics   will continue to concentrate on the (so far undisputed) actual evidence, most if not all coming directly from Ferris or her agent (whose statements of course are fully binding on Ferris).

3.       Ferris now effectively admits that every time she promised Growth and Bemiss that she would promptly complete her "polished" (her word) version of Book 2 and send it to Fantagraphics for its publication she was knowingly lying and had no obligation and no intention of doing so.  To say the least, those new admissions call into question the credibility of her current representations.

4.       Contrary to Ferris' consistently false version of the underlying facts, overwhelming evidence- as presented below  and as  established in the sworn testimony to follow-compels  only on conclusion :the Declaratory Judgment sought by Fantagraphics should be granted.  Indeed, that evidence will establish that Fantagraphics' only fault in the entire underlying saga was its heroic patience – for which Ferris repeatedly expressed her gratitude – in waiting (ultimately in vain) for her to keep her repeated promises to it.  As will

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 2
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

be established below, Ferris' bizarre mishmash of ipse dixit imaginary and trivial accusations of "breach" – unsupported by anything beyond her own self-proclaimed "suspicions" and incapable of supporting any damage award – are not only specious; most were never before even hinted at by her or her agent and seem invented solely for her current pleading.).

5.     The parties agree that the only issue presented by the Complaint is whether, in their January 13, 2016, Publishing Agreement, they understood and intended that the 638-page manuscript for Ferris' book "My Favorite Thing is Monsters" (here MONSTERS) that Ferris admits she submitted to Fantagraphics in August 2015 would be "split" (Ferris' word) and published in two successive volumes.  (A copy of that full manuscript can be provided to the Court upon request.)  Ferris' Answer asserts: "Ms. Ferris denies any suggestion that the Publishing Agreement covers two books." (¶8.)  Because all of Ferris' assertions in response to the Complaint were explicitly incorporated by reference into Ferris' Counterclaims, Fantagraphics must now – in this Reply to those Counterclaims – further respond to those assertions.

6.     The Complaint  ( at ̶P3)noted that Ferris confirmed in late 2018 that Bemiss was "the only person I've ever authorized to be my agent and in communication with [Fantagraphics] about my work."

7.     In her Answer, Ferris – for the first time – seeks to trash the second half of the massive MONSTERS manuscript she submitted to Fantagraphics in 2015 as unpublishable "remnant pages left over from Monsters Book 1." (Counterclaims, ¶14)  But that is not how her agent, acting and speaking for Ferris, saw those pages.  Thus, for example, Bemiss wrote to Groth on August 19, 2015, in part as follows: "I've just read it from cover to cover [i.e., all 638 pages], and I can say that aside from being a page-turning mystery, almost every page is also a masterpiece." (Ferris' 2021 litigation-inspired attempt, for the first time ever, to trash the second half of her original manuscript is also flatly contradicted by her own fulsome summary of it discussed below at Paragraph 20.  Also, Ferris' "remnants" representation

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 3
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

concerning the second half of MONSTERS seems ludicrous when it is noted that Volume One of MONSTERS as published by Fantagraphics consisted of 416 pages (including title page, etc.), which means Ferris' notion of "remnants" actually refers to (at least) the remaining 222 pages.

8.     Groth immediately to Ferris' submission of the 638 page manuscript of MONSTERE,  telling Bemiss that Fantagraphics would agree to publish the entire submitted work.  The parties then proceeded to discuss whether it should be published in one or two volumes.  On that issue, Bemiss wrote to Groth: "[Ferris] is open to releasing this [i.e., the submitted 638-page manuscript] as one big book, or two volumes.  She has ideas about how best to split the book but does want to find an editor who really knows comics, and will be her guide."

9.     And shortly thereafter, on August 25, 2015, in an email to Groth, Bemiss directly quoted Ferris in part as follows: "From Emil: The way it works is that the split happens at approximately 384.  (What is #192 in the pdf.)   . . .  Another good point about division: Dividing the book [singular by Ferris] would allow me to bring 34 pages of what would come to be called the end of Volume II up to the visual/artistic standard set by Volume I.  This requires a more artful execution and some good editing.  All things an editor can guide."

10.     By late 2015 the parties agreed that Fantagraphics would publish MONSTERS in two volumes, with Bemiss writing to Groth on October 23, 2015, in part (all CAPS in the original): "OK.  EMIL SAYS SHE CAN HAVE VOLUME ONE READY BY DECEMBER 31ST.  VOLUME TWO BY APRIL 31ST."

11.     The Complaint ( at ¶8) quoted in full the early 2016 announcement that Bemiss prepared – on Ferris' behalf, and with no objection from Ferris -- of the "deal" Ferris reached with Fantagraphics for the publication of MONSTERS.  That announcement, which appeared in the publishing industry's "bible," Publishers Weekly, stated in its entirety (emphasis

added):

> Gary Groth Groth at Fantagraphics acquired world rights to <u>My Favorite Thing is Monsters</u>, by Emil Ferris. Drawn as the journal of a ten-year-old girl, the story follows her attempt to solve the mystery of the death of her beloved neighbor, a Holocaust survivor. Ferris's drawings reflect a world where the monstrous is beautiful, and where goodness is found in the most unlikely places. <u>The 600+ page, four color graphic novel will be published in 2 volumes, beginning in September 2016</u>. Holly Bemiss of the Susan Rabiner Literary Agency closed the deal.

Significantly – and dispositively – Ferris nowhere contends a) that that announcement was not made on her behalf; b) that anything in the announcement was false; or c) that she ever – at least until very recently – uttered a word of disagreement with it. In fact, Ferris' Answer ( at ¶11) explicitly admits that that announcement "speaks for itself" – an admission that Fantagraphics fully endorses. This crucial admission alone requires the granting of the Declaratory Judgment sought by Fantagraphics in its Complaint.

12.    Ferris' Answer asserts that the parties' January 13, 2016, Publishing Agreement only applied to what she now calls "Monsters Book 1" but previously called "Book 1." This is demonstrably false. In fact, the Agreement applies instead to the singular work entitled "My Favorite Thing is Monsters" – no number – and there is not a word -- not a hint -- in all of the parties' interactions leading to the Agreement that even arguably suggests that the Agreement applies to anything other than the entire 638-page manuscript Ferris admits she submitted to Fantagraphics.

13.    Beginning in 2016 – shortly after the Publishing Agreement was signed and before Book 1 was published – and continuing for several years thereafter, Ferris worked closely with Jacob Covey, the person at Fantagraphics responsible for the design of its books (including Book 1), about the design of Book 2. For example, on June 27, 2016, just after Book 1 was sent to the printer, she wrote, referring specifically to the design of Book 2:

> I've sent some basic cover material, (hoping this will work for a basis - it is an older notebook and hence not scored for tear-off sheets) as well as three interpretations of Jacob's conception to consider. There are fine points of correction that are required to Anka's face. I am now working on transcribing Allison's kind words into my hand.

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 5
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

Any thoughts about the back cover are well appreciated. I think Karen would be best portrayed there. All observations are welcome, though.

Is it possible for me to illustrate the inner front and back covers?

E

Obviously, all that work by Ferris on the design of Book 2 – beginning right after the Publishing Agreement was signed in January 2016 – would have never happened if both parties did not understand that Fantagraphics would be the publisher of the very Book 2 they were then actually designing.

14.    Paragraph 14 of the Complaint asserts (emphasis added here):

In or about early 2016, when the date for the publication of Book 1 was agreed-to, the parties (and Bemiss) further agreed that Book 2 – the second half of the manuscript Ferris submitted in 2015 – would be published in July 2017. <u>With no objection from Ferris or Bemiss, Fantagraphics prominently announced that July 2017 publication date for Book 2 in its catalogue for that publishing season.</u>

Exhibit "A-1" hereto is a copy of the first of those public announcements. For the purposes of that announcement, Ferris agreed that it could include the proposed Book 2 front-cover (and other pages) that she created in collaboration with Fantagraphics' designer Covey as part of her ongoing work with him. The illustration at the upper left part of the attached announcement of the July 2017 publication of Book 2 is Ferris' proffered front-cover of Book 2, and the two other illustrations are the further contributions she created and agreed could be included in that announcement. With respect to the timing of her submission of covers for Book 2, Ferris wrote Groth as follows:

Hi Gary,

I am banging out a large bundle of pages. Is the cover more important right now? Should we give a few days more to the April sending of pages, Gary? Let's say April 6th? That will give me time to work on the cover. Let me know.

Obviously, Ferris would not -- could not -- have been so deeply involved in the cover of Book 2 if she did not understand that Fantagraphics would in fact be the publisher of that (second) volume of what she called "the book."

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 6
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

15.     Fantagraphics further announced the publication of Book 2 in October 2017 and then again in April 2018. ( See Exhibits "A-2" and "A-3.") Those announcements are substantively identical to the first such announcement (Exhibit "A-1"), featuring Ferris' own created front-cover and additional content.

16.     As Ferris now effectively admits, Ferris was aware of and fully approved all those announcements, which can only mean she understood and confirmed Fantagraphics' existing right to publish that Book 2.

17.     On April 8, 2017, responding to Groth's concern about the status of Ferris' "polished" version of Book 2, Bemiss wrote to Groth in part as follows:

> I too thought book 2 was done.  She has assured me she is working on it, mostly the first part that she had to change slightly to split it into 2 volumes. I have talked w her about it several times.  I do recommend you calling her and if you don't get any satisfactory answers, let me know. . . .

> What I'm not sure I understand is why she didn't work on Vol. 2 after Vol. 1 had gone to the printer, which was a year ago, i.e. she's had literally a year to finish Vol. 2 now, most of which was before the real distracting media blitz hit.  But, in fact, I thought she was.

> Anyway, I'm just frustrated and I'm sure there are reasons that I may not know.

18.     Five days later, on April 13, 2017, Bemiss further wrote to Groth as follows:

> Hi Gary I had a a long talk with Emil this morning.  She is still very much trying to make the deadline, but to be honest, at this point, it is not looking good.  She has added a bit to the 2nd book, to account for the break, and it has tripped her up.  At this point, she says she has 200 pages done, but the first 100 are still being smoothed out, and the last 100 need some attention.

19.     About three hours later, Bemiss further wrote to Groth as follows:

> Also, Gary, I know this is a highly annoying situation, but I really don't think Emil knew she wouldn't be able to meet the deadline.  She really has been trying.  I just want you to know that even though it sucks that she didn't tell you sooner, it wasn't malicious.  She really didn't know sooner.  She finally admitted it to herself (and me) today.

20.     On April 16, 2017 -- shortly after Book 1 was published – Ferris responded to an invitation to speak by writing to Fantagraphics' publicity staff: "I could develop a talk I give for when book 2 is out."

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 7
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23ʳᵈ Ave. W*
*Everett, WA 98203*

21.     On April 20, 2017 – belying her claims in her Answer about the unformed, indeed non-existent, status of Book 2 – Ferris provided to *Library Journal* a detailed fully-formed summary of that second volume:

> Many of the paintings that I love that didn't make it into the first book, will be seen in the second book, though. (Get ready for Karen to draw some luscious Renaissance gore!)

> \*        \*        \*        \*

> Anka Silverberg's story takes up quite a bit of Book 2. We see her life in Nazi era Germany and her attempt to save six girls, despite the terrible cost. The mystery of Anka's death is solved and we also come to understand who Karen's brother Deeze has killed. We learn more about the Invisible Man (Karen's father.) Among many other things we find out what became of the down-at-heels ventriloquist Mr. Chugg and ... Karen falls in love!

22.     On April 27, 2017, further belying Ferris' representations in her Answer about the non-existence of Book 2, Bemiss wrote to Groth in part as follows:

> Well we know book 2 exists.  It did already.  It just isn't where she wants it, yet.  I am worried about how she's going to have money to support herself through the summer if she is going to take all summer to finish it.  I was under the impression that she could be done sooner.

23.     In May 2017, Ferris sent to Fantagraphics 38 pages of her promised "polished" version of Book 2.  On June 12, 2017, Groth responded to those pages in part as follows:

> Hi, Emil!

> I wanted to let you know that I read all the new pages you gave me and assessed the transition.

> I think you nailed it. You decided to repeat the key moment —"I am your brother Victor"— which I think was a good call because it's so crucial and it serves as a memory refresher to the reader, and you also managed to make a seamless transition between the two volumes, and included that helpful element as well. I think it works.

24.     On August 18, 2017 – a few months after Book 1 was published and (roughly) when Ferris most recently promised to deliver her "polished" version of Book 2 -- Ferris wrote to the relevant person at Fantagraphics as follows (emphasis added): "Dear Emily, As you are figuring out the logistics of a Book tour for Book2 I thought I would forward these folks to you [owners of a bookstore]."  Obviously, Ferris could not have written that sentence

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 8
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

unless she well understood that Fantagraphics would be the publisher of Book 2, under the only agreement she and it ever signed for MONSTERS.

25.     In September 2017, Ferris participated in a panel discussion sponsored by Fantagraphics at the "Cartoon Crossroads" convention in Columbus, Ohio.  The description of that panel stated in its entirety (emphasis added here):

> Emil Ferris is a phenomenon, stepping forward from behind the curtains of non-creators to drop what will surely be the book of the year: the wonderfully drawn My Favorite Thing is Monsters.  Amy Chalmers digs into what makes Ferris tick, what it's like for a work you've created to see this kind of positive reaction and of course what we might see in next April's volume 2.

Ferris was aware of that description and communicated no objection to it.

26.     On July 7, 2017, Ferris raised with Jacq Cohen, Fantagraphics' Executive Director of Marketing, Publicity and Promotions, a concern about "controversy" about "Book2.  Ferris mused: "So much so that anyone will want to give it separate attention when the time comes."

27.     In emails to Groth dated August 28, 2017, and September 13, 2017, Ferris further admitted that she was obligated to send Book 2 to Fantagraphics.  In the first, she wrote in part:

> Yes, I won't be done with the book until the earliest of late November or the latest of January. Ultimately Fantagraphics will be glad for the work on Book 2.  Trust me on that.

And the second email stated in its entirety:

> Hi Gary,
>
> Of course it would be wonderful to see you, if possible.
> Thank you for explaining things regarding the complexities of publishing.
> I'm sorry for the wait for Book2.
> What I can promise you is that I will try to speed things up and that I have tried to make it well worth the wait.
> Many thanks,
> Emil

28.     In November 2017, a publication of the University of Nevada asked Ferris for permission to publish excerpts from Book 2 and sent her a proposed contract for that use.  In

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

that connection, they wrote: "Please feel free to strike out any of the concerns in this version of the contract that Fantagraphics has." Ferris sent the proposed contract to Fantagraphics for its approval, something she would not have done if she didn't understand that Fantagraphics would be the book publisher of that material.

29.   On December 14, 2017, Bemiss wrote to Groth in part as follows:

She understands that it is a disappointment to you that she hasn't turned it in, yet, but in the process of perfecting the break and the ending, she's gotten a little caught up in the story. I hope she can find her way through it.

30.   On January 18, 2018, Bemiss wrote to Groth in part as follows:

Hi Gary, yes I spoke w Emil yesterday. . . .   she's struggling to get book 2 to you. She now says Feb. 1. She is not doing this out of spite or lack of attention, but I do think she's struggling a bit.

31.   On February 17, 2018, Bemiss wrote to Groth in part as follows:

I spoke with her today and she said she is very much into book 2, very deep in it, and she's also looking forward to (hopefully) moving forward with the film deal, so she sounded good.

32.   On February 23, 2018, Ferris (herself) wrote to Groth in part as follows:

I've reassessed travelling in favor of banging out the book, but I will need April for the last half of the book and I need to know that if I take April to finish I have a commitment from you to bring it out this year. I know you are travelling but could you respond asap.

Many thanks and apologies. . . .

E.

33.   One month later, on March 27, 2018, Ferris again wrote Groth in part as follows:

I will tell you this: I am no fortune teller but I am working very hard. You need to see something of the book and we need to talk about how to get this done.

I am intending to send you the first portion of the book on April 2nd (April 1st isn't fortuitous). At that point we should discuss what to do going forward.

Many thanks for your patience and faith in me.

Many apologies for the difficult aspects of your end of our magic spell.

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 10
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23ʳᵈ Ave. W*
*Everett, WA 98203*

Emil

34.     That same day, Groth responded to Ferris in part as follows: "April 2 would be nice."

35.     In late 2018, Ferris and Fantagraphics agreed to create and publish a "one shot" 32-page comic book to help promote both Book 1 and Book 2 of MONSTERS.  The publication was entitled "Our favorite thing is MY FAVORITE THING IS MONSTERS." Ferris insisted that she see and approve in advance every word – every dot – of that publication, which she did.  The "Welcome" page of that publication, by the Fantagraphics Editor of it, stated in part: "We hope you enjoy this comic book as we eagerly await the release of *My Favorite Thing is Monsters* Book Two in 2020."   Ferris approved that statement.

36.     On April 5, 2018, Jacq Cohen, Fantagraphics' Executive Director of Marketing, Publicity and Promotions, wrote to Ferris with this news: "The most exciting feature I've been able to tentatively secure for *Monsters 2* is an interview (1-2 pages in print) with *O, The Oprah Magazine*."

37.     On the same day, Ferris responded, but not by saying "Are you crazy?  There is no Monsters 2, and if there were you have no rights to it."   Instead, Ferris responded as follows:

Hi Jacq,

Thank you for letting me know all this and for procuring these opportunities.
Mostly I just want everyone to know that I'm thinking about these things and formulating a response.  Meanwhile I'm just going to continue to send in the book.
All best,
Emil

38.     About two weeks later, on April 18, 2018, Ferris broke this news to Groth:

Hi Gary,

We both hoped that Book2 could be brought out this year.  I've given it a lot of thought and don't believe that will happen.

I've tried every approach I can to edit and condense but the book is demanding that I take more time.

I will send you parts of the book as they become print-ready. I feel confident that I can complete the book by the end of the year but there are too many variables to know a certain date.

I know we share the disappointment regarding this fact and I'm doing everything I can.

All best and with great regard,
Emil

39.     On that same day, Groth responded to that news in part as follows:

Dear Emil,

I was about to give you a call because I was wondering, of course, what as [sic] going on.  Having not heard from you since we got those first 38 pages, I kind of figured it was heading in this direction.  I'm sorry it's been so hard. I sympathize; in fact, I more than sympathize.  If you need or want any editorial guidance, please let me know.  I am happy to help.

At this point, after we've had so many different pub dates come and go, I think it's best if we just let you complete it at the pace you and the work require.  I'd appreciate any updates throughout the year. . . .

Emil, everyone who read Volume 1 is anticipating Volume 2 so when you finish, we will crank up the publicity machine and make sure the world knows it's coming and get you a mountain of good press.  We are fully behind you.

40.     In May 2018 Ferris hired a Personal Assistant, Linda Bernard, for the express purpose of relieving Ferris of numerous responsibilities, including scheduling, so as to enable her to concentrate on completing Book 2 and sending it to Fantagraphics without further delay. Ferris directly told Bernard that she was obligated to complete and deliver Book 2 to Fantagraphics and that she was "overdue" in fulfilling that obligation.

41.     On July 31, 2018, Bemiss wrote to Groth in part: "I spoke to her tonight. . . . She said she's working hard on book 2 and has had a breakthrough, which was good to hear."

42.     On October 15, 2018, Ferris wrote to Bernard, her Personal Assistant (emphasis added):

I need to put my focus on getting Book2 done and out of my "fur!"

On a side note, [Fantagraphics'] Eric [Reynolds] had some really good news.  Fanta

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 12
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

wants to make [the one-shot comic book discussed at Paragraph 34 above] be a feature for Monsters, and I'm flattered and excited.  That's 75,000 copies worth of promotion for Book2!  But even as cool as that is, my prime focus has to be on getting this CREATURE finished and into Fanta's aching hands.  they've been fairly patient, although I think it's kind of killing Gary.

43.     Finally (for this recounting), on November 27, 2018, Bernard wrote to two of her Fantagraphics contacts as follows:

Keeping Emil on the straight and narrow?  Surely you jest.  I have no more of a clue what's going on than any of you.

BTW.  Let's save Gary from a stroke and NOT tell him that she was on [Face-book] for hours last night, peddling her MFTIM t-shirt, a mere 5 days before deadline.  The fact that she won't talk directly to Gary and has asked to funnel messages between them through me is an unbelievable new high in the craziness.  But I'm not judging . . . [emoji deleted].

## REPLYING TO THE NUMBERED PARAGRAPHS IN FERRIS' ANSWER

44.     In replying to the numbered paragraphs of Ferris' Answer, which are incorporated by reference in her Counterclaims, Fantagraphics hereby incorporates by reference the contents of Paragraphs 1 through 43 above.

45.     Fantagraphics denies the allegations of Paragraph 1 of Ferris' Answer.

46.     Fantagraphics accepts the admission contained in Paragraph 2 of Ferris' Answer and denies the remaining allegations therein.

47.     Fantagraphics accepts the admissions contained in Paragraph 3 of Ferris' Answer and denies the remaining allegations therein.

48.     Fantagraphics accepts the admission contained in Paragraph 4 of Ferris' Answer and denies the remaining allegations therein.

49.     Fantagraphics denies the allegations in Paragraph 5 of Ferris' Answer.

50.     Fantagraphics accepts the admissions contained in Paragraph 6 of Ferris' Answer and denies the remaining allegations therein.

51.     Fantagraphics accepts the admission contained in  Paragraph 7 of Ferris' Answer and denies the remaining allegations therein.

52.     Fantagraphics accepts the admissions contained in Paragraph 8 of Ferris' Answer and denies the remaining allegations therein.

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

53.     Fantagraphics accepts the admissions contained in Paragraph 9 of Ferris' Answer and denies the remaining allegations therein.

54.     Fantagraphics accepts the admissions contained in and denies and disputes the remaining allegations in Paragraph 10 of Ferris' Answer.

55.     , Fantagraphics accepts the admissions contained in Paragraph 11 of Ferris' Answer and denies the remaining allegations therein.

56.     Fantagraphics accepts Ferris' non-denial of the text set forth in Paragraph 12 of the Complaint and denies the remaining allegations in Paragraph 12 of Ferris' Answer.

57.     Fantagraphics admits that there was no "contractually imposed publication date" for the work identified in the parties' Publishing Agreement and otherwise denies the remaining allegations of Paragraph 13 of Ferris' Answer.

58.     Fantagraphics denies the allegations of Paragraph 14 of Ferris' Answer.

59.     Fantagraphics admits that there was no "contractually imposed publication date" for the work identified in the parties' Publishing Agreement, accepts the admissions in Paragraph 15 of Ferris' Answer, and otherwise denies the remaining allegations therein.

60.      Fantagraphics admits that there was no "contractually imposed publication date" for the work identified in the parties' Publishing Agreement and otherwise denies the remaining allegations of Paragraph 16 of Ferris' Answer.

61.     Fantagraphics admits that there was no "contractually imposed publication date" for the work identified in the parties' Publishing Agreement and otherwise denies the remaining allegations of Paragraph 17 of Ferris' Answer.

62.     Fantagraphics admits that there was no "contractually imposed publication date" for the work identified in the parties' Publishing Agreement and otherwise denies the remaining allegations of Paragraph 18 of Ferris' Answer.

63.     Fantagraphics admits that there was no "contractually imposed publication date" for the work identified in the parties' Publishing Agreement and otherwise denies the

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 14
No. 21-cv-00802-JCC

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA 98203

remaining allegations of Paragraph 19 of Ferris' Answer.

64.     Fantagraphics admits that there was no "contractually imposed publication date" for the work identified in the parties' Publishing Agreement and otherwise denies the remaining allegations in Paragraph 20 of Ferris' Answer.

65.     Fantagraphics denies the allegations in Paragraph 21 of Ferris' Answer.  In particular, as more fully discussed below, Fantagraphics denies the allegation that it refused to "open its books" in an audit pursuant to the parties' Publishing Agreement; in fact, Fantagraphics consistently agreed to do so but, presumably at her direction, each of Ferris' three designated auditors unilaterally abandoned their ostensible desire to conduct such an audit.

66.     Fantagraphics denies the allegations in Paragraph 22 of Ferris' Answer.

67.      Fantagraphics denies the allegations in Paragraph 23 of Ferris' Answer.

68.     Fantagraphics accepts the admissions contained in Paragraph 24 of Ferris' Answer and otherwise denies the allegations therein.  In particular, Fantagraphics denies as egregiously wrong Ferris' suggestion that Federal Rule of Evidence 408 somehow applies to the reference to a letter from her lawyers in that paragraph.  In *Dean Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) the Ninth Circuit held as follows:

> Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief. This is perfectly acceptable under Rule 408.

*See also, Google, Inc. v. Traffic Info*, LLC, 2010 U.S. Dist. LEXIS 27017; 2010 WL 743878 (D. OR 2010), and *Alexander v. The Boeing Co.*, 2014 U.S. Dist. LEXIS 110930; 2014 WL 3900574 (W.D. WA 2014).

69.     Fantagraphics accepts the admissions contained in Paragraph 25 of Ferris' Answer and otherwise denies and disputes the allegations therein.   In particular, Fantagraphics denies as egregiously wrong Ferris' suggestion that Federal Rule of Evidence 408 somehow applies to the reference to the subject letter in that paragraph.  In *Dean Rhoades*

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 15
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

*v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007), the Ninth Circuit held as follows:

> Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief. This is perfectly acceptable under Rule 408.

*See also, Google, Inc. v. Traffic Info*, LLC, 2010 U.S. Dist. LEXIS 27017; 2010 WL 743878 (D. OR 2010), and *Alexander v. The Boeing Co.*, 2014 U.S. Dist. LEXIS 110930; 2014 WL 3900574 (W.D. WA 2014).

70.     Fantagraphics accepts the admissions contained in Paragraph 26 of Ferris' Answer and otherwise denies the allegations therein.  In particular, Fantagraphics denies as egregiously wrong Ferris' suggestion that Federal Rule of Evidence 408 somehow applies to the reference to the subject letter in that paragraph.  In *Dean Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007), the Ninth Circuit held as follows:

> Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief. This is perfectly acceptable under Rule 408.

*See also, Google, Inc. v. Traffic Info*, LLC, 2010 U.S. Dist. LEXIS 27017; 2010 WL 743878 (D. OR 2010), and *Alexander v. The Boeing Co.*, 2014 U.S. Dist. LEXIS 110930; 2014 WL 3900574 (W.D. WA 2014).

71.     Fantagraphics accepts the admissions contained in Paragraph 27 of Ferris' Answer and otherwise denies the allegations therein.  In particular, Fantagraphics denies as egregiously wrong Ferris' suggestion that Federal Rule of Evidence 408 somehow applies to the reference to the subject letter in that paragraph.  In *Dean Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007), the Ninth Circuit held as follows:

> Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief. This is perfectly acceptable under Rule 408.

*See also, Google, Inc. v. Traffic Info*, LLC, 2010 U.S. Dist. LEXIS 27017; 2010 WL 743878 (D. OR 2010), and *Alexander v. The Boeing Co.*, 2014 U.S. Dist. LEXIS 110930; 2014 WL

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 16
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

3900574 (W.D. WA 2014).

72.    Fantagraphics accepts the admissions contained in Paragraph 28 of Ferris' Answer and otherwise denies the allegations therein. In particular, Fantagraphics disputes as egregiously wrong Ferris' suggestion that Federal Rule of Evidence 408 somehow applies to the reference to the subject letter in that paragraph.  *In Dean Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007), the Ninth Circuit held as follows:

> Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief. This is perfectly acceptable under Rule 408.

*See also, Google, Inc. v. Traffic Info*, LLC, 2010 U.S. Dist. LEXIS 27017; 2010 WL 743878 (D. OR 2010), and *Alexander v. The Boeing Co.*, 2014 U.S. Dist. LEXIS 110930; 2014 WL 3900574 (W.D. WA 2014).

73.     Fantagraphics states that it appears that intended content may be missing from Paragraph 29 of Ferris' Answer.  In any event, Fantagraphics accepts Ferris' non-response to the allegations in Paragraph 29 of the Complaint.

74.    Fantagraphics accepts Ferris' non-response in Paragraph 30 of her Answer to certain allegations in Paragraph 30 of the Complaint and denies those allegations that she does respond to.

75.    , Fantagraphics incorporates by reference here its previous responses to that Answer and applies those responses to the allegations in that paragraph of the Answer.

76.    Fantagraphics accepts Ferris' admission in Paragraph 32 of her Answer.

### REPLYING TO THE "COUNTERCLAIMS" IN FERRIS' ANSWER

**77.    First Generally Applicable Statement**

It is undisputed that when Ferris submitted her 638-page manuscript to Fantagraphics the covered work was called "My Favorite Thing is Monsters" (here "MONSTERS") with no number attached.   It is further undisputed that at that time all concerned referred to MONSTERS as one (large) book.  Indeed, at that time Ferris herself referred to the work as

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 17
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

"the book" -- singular -- and she thereafter discussed how that one book might be "split" (her word) so that it -- i.e., the one book called MONSTERS -- could be published in two successive volumes.  It is also undisputed that, following the parties' agreement that the book (singular) would in fact be so "split" and published in two successive volumes, the parties' Publishing Agreement referred only to "My Favorite Thing Is Monsters," with no number attached, which at that time could only be understood as referring to "the book" in its entirety. Indeed, it is also undisputed that Ferris, through her fully acknowledged and disclosed agent, explicitly confirmed that understanding of the Agreement.

When the parties agreed to "split" "the book" for publication in two volumes by Fantagraphics, it became useful to refer to the two volumes as, to adopt Ferris' previous preferred usage,  "Book 1" and Book 2," with "Book 1" referring to the first of the two volumes to be published by Fantagraphics.  As thus understood, Ferris' current usage of "Monsters Book 1" to refer to anything other than the first of the two volumes to be published by Fantagraphics is both inaccurate and misleading.  To avoid perpetuating any further confusion, Fantagraphics rejects Ferris' new usage "Monsters Book 1" and will instead a) refer to what Ferris previously called "the book" as "MONSTERS"; b) refer to what Ferris previously called "Book 1" as "Fantagraphics' Book 1": and c) refer to what Ferris previously called "Book 2" as "Fantagraphics' Book 2."

**78.    Second Generally Applicable Statement**

Virtually from the outset of Ferris' contractual relationship with Fantagraphics, in January 2016, she became obsessed with money, frequently leading to questionable conduct. For example, under their Publishing Agreement Ferris was entitled to an immediate advance payment of $12,000.  However, she demanded instead that Fantagraphics pay that sum to her in monthly installments of $750, apparently to avoid jeopardizing her legal entitlement to disability payments from the State of Illinois.  And even before Fantagraphics' Book 1 was published, Ferris conducted a "GoFundMe" endeavor to raise money to facilitate her

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 18
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

"polishing" of Fantagraphics' Book 2.  In so doing, she actually offered to include in Fantagraphics' Book 2 renditions of people who "contributed" to that fund-raising effort. And once Fantagraphics' Book 1 was published, she constantly demanded that Fantagraphics provide her with detailed interim sales information and pay her royalties before they were due, none of which she was technically entitled to but which Fantagraphics complied with anyway. And when Ferris (or Bemiss at her direction) requested all manner of underlying financial information, to which Ferris was not entitled, Fantagraphics provided what they requested, and thereafter the presumed "suspicions," if there were any, that prompted the requests were apparently erased.  She also undertook personally to hector the French publisher of MONSTERS, accusing it of cheating her.  And, as reported by her own personal assistant Paragraph 42 above), she spent hours on Facebook "peddling" her own MONSTERS t-shirts mere days before her then deadline to deliver to Fantagraphics her "polished" version of Fantagraphics' Book 2.

No doubt inadvertently, Ferris herself forthrightly admits that all her current accusations of "breach," etc., are based on her admitted "suspicions," and nothing more. Thus, in the opening paragraphs of her Answer, she admits (emphasis added):

> But later, Ms. Ferris <u>suspected that Fantagraphics was lying to her and underpaying her</u>. She requested an audit to investigate these issues and has been clear with Fantagraphics that she would only discuss the terms for publication of Book 2 (if at all) after the accounting and resolution of any issues it uncovers. The shortest path for Fantagraphics to Book 2 was to allow the auditors Ms. Ferris hired to review Fantagraphics' records as the contract stipulates. <u>If the audit revealed no issues, Ms. Ferris' concerns would have been settled and the parties could have moved on.  Instead, Fantagraphics fought the audit then filed this lawsuit</u>.

Ferris there unmistakably admits that all her allegations of "breach," etc., in her duly-filed federal court Counterclaims are based on her "suspicions," about which "if the audit revealed no issues, [her] concerns would have been settled."  Under the applicable law and rules, federal claims of "breach" should not – may not – be filed based only on "suspicions" and as a result this Court does not have "case or controversy" jurisdiction even to entertain

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 19
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

those claims.  (We will address below Ferris' utterly false renditions of her three separate requests for audits, <u>all of which she unilaterally abandoned even while Fantagraphics repeatedly confirmed that it was fully prepared to cooperate with the desired audit -- precisely because it has nothing to hide and considered Ferris' "suspicions" baseless, if not pathological</u>.)

In any event, Fantagraphics here asserts that Ferris has been fully paid <u>everything</u> due her under the Publishing Agreement and that her (based-on-suspicions) claims otherwise are and will be conclusively proved entirely false if and as this litigation proceeds.  (Discovery in this case will effectively enable Ferris to conduct  the "audit" she claims to want.)

<u>REPLYING TO THE NUMBERED PARAGRAPHS IN<br>FERRIS' COUNTERCLAIMS</u>

79.     Fantagraphics admits the allegations in Paragraph 1.

80.     Fantagraphics admits the allegations in Paragraph 2.

81.     Fantagraphics admits the allegations in Paragraph 3 that her Counterclaims purport to be the action described in the paragraph.

82.     Fantagraphics denies that this Court has "case or controversy" jurisdiction over Ferris' Counterclaims but otherwise admits the allegations in Paragraph 4.

83.     Fantagraphics admits the allegations in Paragraph 5.

84.     Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics admits that Paragraph 6 presents a generally accurate rendition of parts of MONSTERS.

85.     Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics admits that Paragraph 7 presents a generally accurate description of parts of MONSTERS.

86.     Fantagraphics believes the contents of Paragraph 8 are generally accurate but lacks sufficient knowledge or information to confirm that belief in this Reply.

87.     Fantagraphics admits the allegation in the first sentence of Paragraph 9 and

PLAINTIFF'S REPLY TO FERRIS'<br>COUNTERCLAIMS – 20<br>No. 21-cv-00802-JCC

*Endejan Law, LLC*<br>*5109 23rd Ave. W*<br>*Everett, WA 98203*

1    denies the balance of that paragraph.

2         88.    Fantagraphics incorporates here by reference the contents of Paragraph 77

3    above. Fantagraphics admits the allegations in Paragraph 10 to the extent they refer to

4    MONSTERS.

5         89.    Fantagraphics incorporates here by reference the contents of Paragraph 77

6    above. Fantagraphics denies the allegations in Paragraph 11 except admits that Ferris agreed

7    in the parties' Publishing Agreement that Fantagraphics would publish MONSTERS in two

8    volumes and pursuant to that agreement she submitted to Fantagraphics her "split" version of

9    what became Fantagraphics' Book 1.

10        90.    Fantagraphics incorporates here by reference the contents of Paragraph 77

11   above.  Fantagraphics admits the allegations of Paragraph 12 to the extent they refer to

12   Fantagraphics' Book 1.

13        91.    Fantagraphics incorporates here by reference the contents of Paragraph 77

14   above.  Fantagraphics admits the allegations in Paragraph 12 to the extent they refer to

15   Fantagraphics' Book 1.

16        92.    Fantagraphics incorporates here by reference the contents of Paragraph 77

17   above.  Fantagraphics admits the allegations of Paragraph 13 to the extent they refer to

18   Fantagraphics' Book 1.

19        93.    Fantagraphics incorporates here by reference the contents of Paragraph 77

20   above.  Fantagraphics admits the allegations in the first sentence of Paragraph 14 to the extent

21   they refer to MONSTERS and to 2015 and not 2016.  Fantagraphics' denies the balance of

22   that paragraph.

23        94.    Fantagraphics incorporates here by reference the contents of Paragraph 77

24   above. Fantagraphics denies the allegations in Paragraph 15.

25        95.    Fantagraphics incorporates here by reference the contents of Paragraph 77

26   above. Fantagraphics denies the allegations in Paragraph 16.

27

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 21
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

96.     Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics denies the allegations of Paragraph 17 except admits that the work covered by the Publishing Agreement was identified as MONSTERS and that Ferris herself referred to MONSTERS in the singular as "the book."

97.     Fantagraphics incorporates here by reference the contents of Paragraph 78 above. Fantagraphics denies the allegations in Paragraph 18 except admits that the quoted parts of the Publishing Agreement are fully consistent with the agreed publication of MONSTERS in two volumes and that Ferris herself (through Bemiss) confirmed the delivery dates as follows (all CAPS in original): "OK. EMIL SAYS SHE CAN HAVE VOLUME ONE READY BY DECEMBER 31ST.  VOLUME TWO BY APRIL 31ST."  (Paragraph 9 above.)

98.     Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics denies the allegations in Paragraph 19 except admits that the advance provided for in the Publishing Agreement was for the work identified there. i.e., MONSTERS.

99.     Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics denies the allegations in Paragraph 20 except admits that the work covered by the Publishing Agreement was identified as MONSTERS – with no number – thus necessarily referring to the entirety of what Ferris called "the book," singular.

100.    Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics denies the allegations in Paragraph 21 except admits that the work covered by the Publishing Agreement was identified as MONSTERS – with no number – thus necessarily referring to the entirety of what Ferris called "the book," singular.

101.    Fantagraphics admits the allegations in Paragraph 22.

102.    Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics denies the allegations in Paragraph 23.

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 22
No. 21-cv-00802-JCC

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA 98203

103.    Fantagraphics lacks sufficient knowledge or information to address the allegations in Paragraph 24 of conversations between Ferris and Bemiss and assumes that their respective sworn testimony will shed light on those alleged conversations.

104.    Fantagraphics denies the allegations of Paragraph 25 except admits that Ferris sought and accepted money from strangers to include renditions of them in Fantagraphics' Book 2.

105.    Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics denies the allegations in Paragraph 26 except admits that Ferris repeatedly failed to keep her repeated promises to deliver her "polished" version of Fantagraphics' Book 2 for publication by Fantagraphics pursuant to the Publishing Agreement and that the quotations included in that paragraph are fully consistent therewith.

106.    Fantagraphics incorporates here by reference the contents of Paragraph 77 above.  Fantagraphics lacks sufficient knowledge or Information to address the allegations in Paragraph 27 about various statements made by her except admits and treats as binding on her that she publicly declared: "In an October of 2017 interview, in response to a question regarding whether [what she now calls] Monster Book 2 would be published in March of 2018, she stated that 'God willing' it would come out the following year" -- even while, as she admits in Paragraph 28, "she originally hoped to deliver [her word] the finished book to Fantagraphics in 2017 . . ."

107.    Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics denies the allegations in Paragraph 28 and asserts that to the extent Ferris' proffered excuses for her non-delivery are at all accurate, they were of her own making, whereby, inter alia, she arranged appearances and interviews and the like on her own and against the wishes of Fantagraphics.

108.    Fantagraphics incorporates here by reference the contents of Paragraphs 77 and 78 above.  Fantagraphics lacks sufficient knowledge or information to address the contents of

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 23
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

Paragraph 29, in which she proffers her various excuses for her admitted failure to "deliver" [her word] to Fantagraphics her promised "polished" version of the second half of MONSTERS but repeats that most of those excuses were of her own making.

109. Fantagraphics incorporates here by reference the contents of Paragraphs 77 and 78 above. Fantagraphics denies the allegations of Paragraph 30 except admits that as a result of the approved-and-contributed-to-by-Ferris announcements of the forthcoming publication of Fantagraphics' Book 2, stray orders were received therefor, but no "sales" were consummated.

110. Fantagraphics incorporates here by reference the contents of Paragraph 77 above.

111. Fantagraphics denies the allegations of Paragraph 31.

112. Fantagraphics incorporates here by reference the contents of Paragraph 77 above. Fantagraphics admits that, along with other binding agreements and commitments, the Publishing Agreement governs the publication by Fantagraphics of the work identified therein, i.e., MONSTERS.

113. Fantagraphics incorporates here by reference the contents of Paragraphs 77 and 78 above. Fantagraphics denies the allegations of Paragraph 33 except admits that Ferris delivered to Fantagraphics her "split" version of Fantagraphics' Book 1, which Fantagraphics then published.

114. Fantagraphics admits the allegation in Paragraph 34 that the Publishing Agreement refers to "the book," i.e., the work identified therein, MONSTERS, and refers to the Agreement for its contents.

115. Fantagraphics incorporates here by reference the contents of Paragraph 78 above.

116. Fantagraphics acknowledges Ferris' admission in Paragraph 35 that her claims are based on her "suspicion" and admits that on occasion Ferris or Bemiss would request

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 24
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

underlying financial information from Fantagraphics, which Fantagraphics provided, to the apparent satisfaction of Ferris.

117.    Fantagraphics incorporates here by reference the contents of Paragraph 78 above.

118.    Fantagraphics acknowledges Ferris' admission in Paragraph 36 that her claims are based on her "suspicion" and admits that on occasion Ferris or Bemiss would request detailed underlying financial information from Fantagraphics, which Fantagraphics provided, to the apparent satisfaction of Ferris.  Otherwise Fantagraphics denies the allegations of Paragraph 36.

119.    Fantagraphics incorporates here by reference the contents of Paragraph 78 above.

120.    Fantagraphics denies the allegations in Paragraph 37 except admits and admits that on occasion Ferris or Bemiss would request detailed underlying financial information from Fantagraphics, which Fantagraphics provided, to the apparent satisfaction of Ferris.

121.    Fantagraphics incorporates here by reference the contents of Paragraph 78 above.

122.    Fantagraphics denies the allegations in Paragraph 38 and states that her suspicions notwithstanding, Ferris has been provided accurate information as required by the Publishing Agreement.

123.    Fantagraphics incorporates here by reference the contents of Paragraph 78 above.

124.    Fantagraphics denies the allegations in Paragraph 39 in that Ferris has been paid the full amount due her for eBook sales.  Fantagraphics further asserts that Ferris never before her Counterclaims were filed raised any issue about eBook sales and that, apart from the Counterclaims, a bookkeeping error was discovered, and full payment was immediately sent to Ferris. Thus, with that "error" [Ferris' word] now corrected, Ferris cannot claim any

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 25
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

1    damages as a result of it.

2         125.    Fantagraphics incorporates here by reference the contents of Paragraph 78

3    above.

4         126.    Fantagraphics admits that the "error" claimed in Paragraph 40 was

5    immediately corrected when brought to its attention and as a result, even assuming such an

6    "error" can constitute an actionable "breach," it was corrected so that Ferris cannot claim any

7    damages as a result of it.  Fantagraphics otherwise denies the allegations in Paragraph 40.

8         127.    Fantagraphics incorporates here by reference the contents of Paragraph 78

9    above.

10        128.    Fantagraphics asserts that the utterly generic and imprecise allegations in

11   Paragraph 41 are based on her "suspicions" and Fantagraphics denies those allegations.

12        129.    Fantagraphics incorporates here by reference the contents of Paragraph 78

13   above.

14        130.    With respect to the allegations in Paragraph 42, Fantagraphics repeats that

15   Ferris has been fully paid all that she is entitled to under the Publishing Agreement and that an

16   occasional slight delay in providing statements is not an actionable "breach" and that she can

17   claim no damages therefrom.

18        131.    Fantagraphics incorporates here by reference the contents of Paragraph 78

19   above.

20        132.    With respect to the allegations in Paragraph 43, Fantagraphics repeats that

21   Ferris has been fully paid all that she is entitled to under the Publishing Agreement and that an

22   occasional slight delay in providing statements is not an actionable "breach" and that she can

23   claim no damages therefrom.

24        133.    Fantagraphics incorporates here by reference the contents of Paragraph 78

25   above.  Fantagraphics denies the allegations in Paragraph 44 because the referenced statement

26   was in fact duly sent.

27

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 26
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

134.     Fantagraphics incorporates here by reference the contents of Paragraphs 77 and 79 above. Although the first sentence of Paragraph 45 is presented as an unhedged fact, and not, e.g., "on suspicion," it is flatly false and for that reason Fantagraphics denies it. Fantagraphics has never authorized anyone to publish any of its books "on demand," and Ferris has never before filing her Counterclaims even presented to Fantagraphics any such suspicion, because if she had it would immediately have been dispelled.   Fantagraphics refers to the Publishing Agreement for its terms and otherwise denies the allegations in Paragraph 45.

135.     Fantagraphics incorporates here by reference the contents of Paragraphs 77 and 78 above.  With respect to the allegations in Paragraph 46, Fantagraphics repeats that Ferris has been fully paid for all royalty-bearing sales of Fantagraphics' Book 1, including those referred to in this paragraph, so that she can claim no damages based the claims in this paragraph.  Fantagraphics admits that a small number of copies may have been inadvertently sold in the countries named but states that such sales could only benefit Ferris and could not have caused her any damage.  Fantagraphics otherwise denies the allegations in Paragraph 46.

136.     Fantagraphics refers to the Publishing Agreement for its terms.  Fantagraphics flatly denies the allegation in Paragraph 47 that it ever refused to permit an audit – in fact, it light of  Ferris' repeated requests for financial information, which requests were complied with, it welcomed such a review.

137.     Fantagraphics denies the allegations in Paragraph 48.

138.     With respect to the requested audit referenced in Paragraph 49, Fantagraphics and the proposed auditor agreed that under the Publishing Agreement the audit had to be conducted at Fantagraphics' offices ("during ordinary business hours").  Upon that agreement, apparently at Ferris' direction, that proposed auditor abandoned the request.  Except as thus explained, Fantagraphics denies the allegations in Paragraph 49.

139.     With respect to the allegations in Paragraph 50, Ferris apparently admits that it

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 27
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

was expected and approved by her that her auditors would be bound by a strict "non-disclosure agreement" while at the same time insisting that she should be free to publicly disclose any and all documents and information provided by Fantagraphics, including Fantagraphics' most competitively sensitive documents, and including for the sole purpose of harming Fantagraphics.  (Ferris does not explain why she believed her auditors should be subject to an NDA, which was their common practice, but that she could not.)  Fantagraphics admits that it would not agree to that ludicrous demand. However, Fantagraphics did offer to mediate that dispute, which offer Ferris declined, thus in effect aborting her own requested audit. Ferris' proposed auditors did not defend Ferris' demand that she has access to all documents and information provided by Fantagraphics and also be free to do whatever she wanted therewith Fantagraphics admits that KPMG were the third set of auditors hired by Ferris and otherwise denies the allegations of Paragraph 50.

140.   With respect to the allegations in Paragraph 51, Fantagraphics refers to the Publishing Agreement for its terms.  Fantagraphics admits that it originally proposed an "Auditors' Eyes Only" provision for Fantagraphics' most competitively sensitive material, which KPMG said they've adopted in other audits, but when that proposal was rejected by Ferris, Fantagraphics then proposed that Ferris herself sign such an NDA.  As she now admits, she refused to sign any such agreement.  Otherwise, Fantagraphics denies the allegations in Paragraph 51.

141.   With respect to the allegations in Paragraph 52, Fantagraphics admits that its lawyer represented it in connection with the auditor's proposed NDA and asserts that such representation was welcomed by the auditors and entirely proper.  Fantagraphics repeats here the following contents from Paragraph 131 above: "Fantagraphics admits that it originally proposed an "Auditors' Eyes Only" provision for Fantagraphics' most competitively sensitive material, which KPMG said they've adopted in other audits, but when that proposal was rejected by Ferris, Fantagraphics then proposed that Ferris herself sign an appropriate NDA.

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 28
No. 21-cv-00802-JCC

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA 98203

As she now admits, she refused to sign any such agreement." And as she also now admits, at that point Fantagraphics proposed mediation to resolve that impasse, but again Ferris rejected that proposal as well, and the result of that refusal by Ferris was that the proposed audit was aborted and abandoned by Ferris. To the extent Ferris believes Fantagraphics' conduct in this connection was in any way improper and in bad faith, Fantagraphics denies any such suggestion. And, in any event, through discovery in connection with her Counterclaims Ferris will in effect secure the very "audit" she claims to want, but one governed by an appropriate Confidentiality Order and supervised by the Court. Otherwise, Fantagraphics denies the allegations in Paragraph 52.

142.   Fantagraphics denies the allegation in Paragraph 53.

143.   Fantagraphics denies the allegation in Paragraphs 55 through 57, 62 through 68, and 70 through 72.

144.   **DEFENSES**

1. Ferris' Counterclaims fail to state a claim upon which relief could be granted.

2. The Court lacks subject matter jurisdiction over Ferris' Counterclaims.

3. Ferris' Counterclaims are barred by her material misrepresentations.

4. Ferris' Counterclaims are barred by her bad faith and unclean hands.

5. Ferris' Counterclaims are barred by her breaches of her obligations to Fantagraphics.

6. Ferris' Counterclaims are barred by her lack of damages or injury.

7. Ferris' Counterclaims are barred by the doctrine of fraud.

8. Ferris' Counterclaims are barred by the doctrines of estoppel and waiver.

**RESERVATION OF DEFENSES**

Fantagraphics reserves the right to amend and/or supplement its Reply to assert any and all pertinent defenses ascertained through further investigation and discovery of this action.

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 29
No. 21-cv-00802-JCC

*Endejan Law, LLC*
*5109 23rd Ave. W*
*Everett, WA 98203*

Fantagraphics will rely on all defenses that may become available during discovery or trial.

WHEREFORE, Fantagraphics respectfully requests that Ferris' Counterclaims be dismissed in their entirety with prejudice and that Fantagraphics be awarded its costs and attorneys' fees in that connection, together with such other relief as the Court deems just.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rules of civil Procedure 38(b), Fantagraphics demands a trial by jury of all issues so triable.

DATED September _____, 2021.

Respectfully submitted,

ENDEJAN LAW LLC

_s/Judith A. Endejan_____
Judith A Endejan, WSBA #11016
5109 23rd Avenue West
Everett, WA. 98203
206-799-4843 | jendejan@gmail.com

Kenneth P. Norwick*
NORWICK & SCHAD
110 East 59th Street
New York, NY 10022
212-751-4440 | ken@norwickschad.com
*Pro Hac Vice
*Attorneys for Plaintiff*

PLAINTIFF'S REPLY TO FERRIS'
COUNTERCLAIMS – 30
No. 21-cv-00802-JCC

Endejan Law, LLC
5109 23rd Ave. W
Everett, WA 98203