THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FANTAGRAPHICS BOOKS, INC., | No. 2:21-cv-00802-JCC |
| Plaintiff, | JOINT STATUS REPORT |
| v. | |
| EMIL FERRIS, | |
| Defendant. | |
| EMIL FERRIS, | |
| Counter-Claimant, | |
| v. | |
| FANTAGRAPHICS BOOKS, INC., | |
| Counter-Defendant. | |

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Pursuant to the Court's Order dated August 24, 2021 (Docket No. 17), Federal Rule of

2    Civil Procedure 26(f) and Local Civil Rules 16(a)(2) and 26(f), counsel for the Parties respectfully

3    submit this Joint Status Report with respect to this case.

4    **1.    BACKGROUND**

5        **a.    Parties**

6    The plaintiff is Fantagraphics Books, Inc. ("Fantagraphics"), a book publishing company

7    based in Seattle, Washington. The defendant is Emil Ferris ("Ms. Ferris"), an author and artist

8    based in Illinois.

9        **b.    Subject of the Action**

10   In late 2015 the parties agreed that Fantagraphics would publish Ms. Ferris' graphic novel

11   entitled MY FAVORITE THING IS MONSTERS ("MONSTERS"), and on January 12, 2016 they

12   entered into a Publishing Agreement ("Publishing Agreement") for that publication.   By this

13   action, Fantagraphics seeks a Declaratory Judgment with respect to the interpretation of the

14   Parties' agreement.  In her Answer, Ms. Ferris has asserted counterclaims for "Breach of Contract,"

15   "Breach of the Covenant of Good Faith and Fair Dealing," and "Declaratory Judgment."

16       **c.    Counsel**

17   For Plaintiff and Counter-Defendant Fantagraphics Books, Inc.:

18       Kenneth P. Norwick (Pro Hac Vice)
         Norwick & Schad
19       110 East 59th Street
         New York, NY 10022
20       T:  212-751-4440
         C:  917-553-3340
21       E.  ken@norwickschad.com

22       Judith A. Endejan (SBN 164960) (Local Counsel)
         Endejan Law, LLC
23       5109 23rd Avenue West
         Everett, WA 98203
24       T: (206) 799-4843
         E: jendejan@gmail.com
25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

<u>For Defendant and Counter-Claimant Emil Ferris:</u>

2

Judith B. Jennison (SBN WA 36463)
Lauren E. Staniar (SBN WA 48741)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
T: 206.359.8000
F: 206.359.9000
E: Jjennison@perkinscoie.com
    LStaniar@perkinscoie.com

3

4

5

6

7

**d.**    **<u>Rule 26(f) Conference</u>**

8

Pursuant to the above referenced Court Order, on November 29, 2021, the Parties, by their

9

above-named counsel, conducted an extensive Rule 26(f) conference by video call.

10

**e.**    **<u>Summary of Claims</u>**

11

A.    ***<u>Fantagraphics' Statement</u>***.

12

In or about August 2015, Ferris through her literary agent Holly Bemiss ("Bemiss"),

13

submitted to Fantagraphics a very long (more than 600 pages) manuscript for MONSTERS.

14

Responding to Fantagraphics' concern about its length, Bemiss wrote:   "[Ferris] is open to

15

releasing this as one big book or two volumes.  She has ideas as to how best to split the book, but

16

does want to find an editor who really knows comics, and will be her guide." The parties'

17

Publishing Agreement, titled "PUBLISHING  AGREEMENT[:]  MY  FAVORITE  THING  IS

18

MONSTERS," is annexed to the Complaint as Exhibit A.

19

The parties agreed that MONSTERS was too long to be successfully published in a single

20

volume and that it would therefore be published in two separate volumes.  Acting as Ferris' agent

21

(and thus binding on Ferris), Bemiss confirmed and publicly announced the parties' agreement as

22

follows (emphasis added):

23

Gary Groth at Fantagraphics acquired world rights to My Favorite Thing Is
Monsters, by Emil Ferris.  Drawn as the journal of a ten-year-old girl, the story
follows her attempt to solve the mystery of the death of her beloved neighbor, a
Holocaust survivor.  Ferris's drawings reflect a world where the monstrous is
beautiful, and where goodness is found in the most unlikely places.  <u>The 600+
page, four color graphic novel will be published in 2  volumes, beginning in</u>

24

25

26

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 3

September 2016.  Holly Bemiss of the Susan Rabiner Literary Agency closed the deal.

After the publication date of the first volume was set, the parties further agreed that "Book 2" -- as Ferris consistently called it – would be published in July 2017.  With no objection from Ferris or Bemiss, Fantagraphics prominently announced that July 2017 publication date for Book 2 in its catalogue for that publishing season.  Fantagraphics published the first volume of MONSTERS in February 2017, with its title page stating:  "MY FAVORITE THING IS MONSTERS[:] BOOK ONE."

In early 2016, more than a year before the agreed July 2017 publication date for Book 2, Ferris advised Fantagraphics that she wanted to "polish" (her word) the remaining part -- 222 manuscript pages – of MONSTERS before it was published on the announced date.  Relying on her promise to deliver her polished version of Book 2 to Fantagraphics in time to have it published on the announced July 2017 date, Fantagraphics agreed to Ferris' request to polish it.  In this connection, Fantagraphics and Ferris understood that Book 2 of MONSTERS had already been submitted to Fantagraphics for publication, was publishable as submitted, and was under contract for publication.

However, Ferris failed to meet her promised delivery-date for her polished Book 2, thus thwarting its announced July 2017 publication date.  And thereafter, throughout 2016, 2017, 2018, and 2019, Ferris repeatedly promised to deliver to Fantagraphics her polished Book 2 for its newly-set publication dates but then repeatedly failed to keep those promises.  During the entirety of those four years, Ferris a) repeatedly confirmed that she "owed" Book 2 to Fanta-graphics and intended to get it to Fantagraphics, b) repeatedly approved Fantagraphics' successive announcements of new publication dates for that volume, c) knowingly approved and accepted advance payments for contracted-for foreign editions of Book 2, d) created and sent to Fantagraphics a proposed cover for Book 2, and e) never once questioned that Fantagraphics had the right to publish that volume under the Publishing Agreement.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1      Beginning in 2020, however, apparently as a ploy to extract money from Fantagraphics to

2  induce her to "allow" it to publish Book 2, Ferris for the first time asserted that Fantagraphics did

3  not have the right to publish Book 2.  Thereafter, that claim was reiterated by her current lawyers

4  in "Rule 408" "Cease and Desist" letters.  This action for a Declaratory Judgment declaring Fanta-

5  graphics' right to publish Book 2 was commenced in June 2021.

6      In her Answer, Ferris affirmatively asserted -- albeit explicitly premised on Ferris'

7  "suspicions" -- one counterclaim for alleged "Breach of Contract," one for alleged "Breach of the

8  Covenant of Good Faith and Fair Dealing," and one for "Declaratory Judgment." Fantagraphics

9  had denied all those claims.

10        B.    ***Ms. Ferris' Statement:***

11      The Parties' relationship is governed by the plain text of the Publishing Agreement. That

12  Agreement, by its own terms, covers only one book, MY FAVORITE THING IS MONSTERS

13  Book 1 (Monsters Book 1), which Fantagraphics has already published. The Publishing Agreement

14  does not mention a Book 2. It defines and references "the book" in the singular throughout. It also

15  includes only one delivery date and one publication date. So, while Ms. Ferris always intended to

16  finish the story arc of Monsters Book 1, and the Parties hoped and planned that Fantagraphics

17  would publish MY FAVORITE THING IS MONSTERS Book 2 ("Monsters Book 2"), Ms. Ferris

18  is not legally obligated—by the Publishing Agreement or otherwise—to follow through with that

19  initial plan. Simply put, a plan or desire to do something does not create a legal obligation. The

20  Publishing Agreement does not speak to Book 2, and that is the end of the story on the declaratory

21  judgment claims.

22      Ms. Ferris also asserts claims for breach of contract and breach of the covenant of good

23  faith and fair dealing based on Fantagraphics' persistent underpayments of royalties, efforts to

24  thwart the audit Ms. Ferris is entitled to under the Publishing Agreement, late payments, threats to

25  publish draft pages from her original manuscript as Book 2 and other acts by Fantagraphics.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Ms. Ferris has suspected for some time that Fantagraphics has been underpaying her. For example, Section 3(a)(vii) of the Publishing Agreement provides that Fantagraphics will pay Ms. Ferris 50% of the amount received from e-book sales. Yet Ms. Ferris' royalty statements indicate she is paid no more than 25% for royalties from e-book sales. Ms. Ferris also believes that Fantagraphics failed to properly account for its sale and licensing of Monsters Book 1 to libraries, including online libraries, which further reduced Ms. Ferris' royalty payments. Fantagraphics has also breached the Publishing Agreement by delivering late and incomplete royalty statements, in violation of Section 8(c) of the Agreement.  She also believes Fantagraphics has sold English language versions of Monsters Book 1 outside of the territory specified in the Publishing Agreement

Finally, Fantagraphics has repeatedly thwarted Ms. Ferris's attempt to audit Fantagraphics financial records relating to Monsters Book 1, a right she is afforded under Section 9 of the Publishing Agreement. Ms. Ferris told Fantagraphics as early as 2018 that she would like more information about its accounting practices. Twice Ms. Ferris hired accounting firms to effect her rights under Section 9, but each time Fantagraphics made unwarranted demands of Ms. Ferris and the auditors that effectively prevented the audit from proceeding.  To this day, Fantagraphics insists that the audit cannot go forward without a court-ordered two-tiered Protective Order that would allow them to shield from her documents relevant to her royalty calculations, something Section 9 of the Parties' agreement does not contemplate.  Indeed, Section 9 permits Ms. Ferris to audit Fantagraphics' accounting records personally.  Fantagraphics' insistence that Ms. Ferris sign away legal rights in order to exercise her rights under the Parties' agreement is a breach of Section 9 of the Agreement.

Fantagraphics' actions go beyond mere breach of contract and amount to bad faith and unfair dealing. Fantagraphics' has used the Publishing Agreement and its relationship with Ms. Ferris to gain power and leverage over her for Fantagraphics' benefit. Specifically, Fantagraphics has violated the covenant of good faith and fair dealing by: using the Agreement to threaten Ms.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  Ferris into giving Fantagraphics Monsters Book 2; threatening to publish incomplete draft pages

2  from Monsters Book 1 as Monsters Book 2, which would harm Ms. Ferris' reputation and artistic

3  integrity; filing this action in an attempt to coerce Ms. Ferris into giving it the rights to publish

4  Monsters Book 2; and erecting unnecessary and unreasonable barriers to the audits that Ms. Ferris

5  requested, and to which she was entitled under the Agreement.

6      Fantagraphics' breach of the Publishing Agreement suspends any obligations Ms. Ferris

7  has under the Agreement.  Therefore, even if the Court were to determine that the Publishing

8  Agreement contemplates a second book, Fantagraphics has forfeited those rights through its failure

9  to live up to its own obligations under the agreement.  In cannot force her to live up to her bargain

10 while it is itself in material breach.

11      In addition, Paragraph 9 provides that "If the Publisher fails to report sales or fails to pay

12 the author the royalties due and does not resolve this within 60 days of notification by the Author

13 or her agent, all rights will revert to the Author."  Ms. Ferris has been questioning Fantagraphics'

14 royalty calculations for years, most recently in her August 23, 2021 counterclaim for breach of

15 contract.  In the 60 days following her counterclaim, Ms. Ferris repeatedly requested an audit, but

16 Fantagraphics has neither provided the audit nor resolved any of the questions Ms. Ferris raised in

17 her counterclaim.  Fantagraphics' refusal to provide the audit and to allow Ms. Ferris to effectively

18 police the royalties she has been paid and get answers to her questions is a constructive failure to

19 report sales.  Accordingly, Ms. Ferris contends that Fantagraphics has forfeited any rights under

20 the agreement, including to Book 1.

21      **f.    Protective Order**

22      The Parties are negotiating a Protective Order and making good progress.  They will report

23 further to the Court in due course.

24      **g.    Initial Disclosures**

25      The Parties served their initial disclosures on December 6, 2021, the deadline set by the

26 Court.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    **h.**   **Insurance**

2    Neither party believes there is insurance coverage for any of the claims against it.

3    **2.**   **LOCAL CIVIL RULE 26(f)(1) TOPICS**

4    **a.**   **Possibilities for promptly settling the case (LCR 26(f)(1)(A))**

5    A.   ***Fantagraphics position.***

6    Fantagraphics believes that there is no currently foreseeable possibility for a prompt

7    settlement of either aspect of this case.

8    1.   Fantagraphics' Claim for a Declaratory Judgment

9    With respect to Fantagraphics' (non-monetary) claim for a Declaratory Judgment

10   interpreting the parties' Publishing Agreement, Ms. Ferris does not dispute that her agent, speaking

11   for and binding her, unequivocally confirmed that the parties' Publishing Agreement provided that

12   Ms. Ferris' "600+ page four color graphic novel will be published in 2 volumes." Ms. Ferris also

13   does not dispute that for four full years after the Publishing Agreement was signed she consistently

14   (by word and deed) confirmed and never once challenged that (binding-on-her) description of the

15   Agreement.   In fact, her current position -- which she first asserted in 2020 -- is entirely based on

16   a demonstrably false rendition of the Agreement.   Specifically, while she now claims that the

17   Agreement somehow refers only to "Book 1" of MONSTERS, the undisputed fact is that the

18   Agreement contains no reference whatever to "Book 1" and only refers to the work entitled MY

19   FAVORITE THING IS MONSTERS, which obviously (and admittedly) means "the 600+ page

20   four color graphic novel" that everyone agrees bore that title.  Fantagraphics believes Ms. Ferris'

21   four-years-later purported reversal -- by which she seeks to disown and completely contradict her

22   prior admissions --  is simply a bad faith attempt to "extort" money from Fantagraphics by getting

23   it to "buy" from her in "settlement" what she previously admitted it already owns.  Fantagraphics

24   declines to acquiesce to that attempt and "settle" that manifestly baseless claim.  Any direction to

25   compel a settlement process with respect to that claim would thus be both unproductive and a

26   waste of valuable resources.

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 8

While, for the reasons stated above, Fantagraphics opposes a court direction compelling it to participate in any ADR process with respect to its Declaratory Judgment claim, it adds here that it has proposed to Ms. Ferris' counsel an approach to settlement that could resolve that claim to her ostensible satisfaction without Fantagraphics having to "buy" from her rights it already owns. However, Ms. Ferris has consistently rejected that proposed approach. (Contrary to Ms. Ferris' false representations in this connection, Fantagraphics never suggested a new Publishing Agreement, since any such is utterly unnecessary, but it did express openness to negotiated tweaks to the current operative Agreement by way of addendums to it.)

Moreover, Fantagraphics further acknowledges that it believes it is hypothetically possible that Ms. Ferris, in her begging for an immediate court-ordered settlement process -- which is entirely consistent with what we believe is her "extortion" strategy – may not actually demand that Fantagraphics "buy" from her in "settlement" rights it already owns.  To test that hypothesis, but without involving a formal process, Fantagraphics invites Ms. Ferris' counsel to communicate to it privately, shielded by Rule 408, the opening proposal it would make in any event in a formal settlement process.  Fantagraphics could then immediately know whether further settlement efforts might be viable.  Obviously, this new proposal presents no risk of any kind to Ms. Ferris and has at least a hypothetical prospect of leading to further settlement activity.

## 2.  Ms. Ferris' Counterclaims

With respect to Ms. Ferris' counterclaims, her own pleading candidly admits that those claims are based entirely on her "suspicions" and nothing more.  Here is that admission (from page 2 of her Answer, emphasis added)

> Ms. Ferris **suspected** Fantagraphics was lying to her and underpaying her. She requested an audit **to investigate these issues** and has been clear with Fantagraphics that she would only discuss the terms for publication of Book 2 (if at all) after the accounting and resolution of any issues it uncovers. The shortest path for Fantagraphics to Book 2 was to allow the auditors Ms. Ferris hired to review Fantagraphics' records as the contract stipulates. **If the audit revealed no issues, Ms. Ferris' concerns would have been settled and the parties could have moved on. Instead, Fantagraphics fought the audit then filed this lawsuit.**

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

2      Contrary to Ms. Ferris' demonstrably false representations, Fantagraphics has consistently

3  agreed to facilitate her requested audit, but Fantagraphics acknowledges that it also consistently

4  refused to accede to her demand -- actually repeated in her pleading -- that she be free to publicly

5  disclose any and every financial document provided by it for the audit. But now, and only since

6  this litigation was commenced, Ms. Ferris has agreed to withdraw her free-to-disclose demand and

7  as a result, as soon as a Protective Order is entered, the audit by her designated KPMG auditors

8  can proceed immediately.

9      Ms. Ferris does not claim a single dollar of damages; only that she "suspects" that she may

10  have such.  Here too, Fantagraphics is convinced that Ms. Ferris' "counterclaims" are also just

11  another bad faith attempt to "extort" money from Fantagraphics based only on her "suspicions"

12  and Fantagraphics declines to acquiesce to that attempt and "settle" those (based only on

13  "suspicions") counterclaims. Any direction to compel a settlement process with respect to those

14  claims, at least at this time would also be both unproductive and a waste of valuable resources.

15  Instead, it seems obvious that any possible settlement process with respect to Ms. Ferris'

16  counterclaims should at a minimum await the outcome of that audit, since, to quote Ms. Ferris'

17  own pleading,"[i]f the audit revealed no issues, Ms. Ferris' concerns would have been settled and

18  the parties could have moved on [with nothing further to "settle"]."

19          B.      ***Ms. Ferris's position.***

20      Ms. Ferris has attempted to jumpstart settlement discussions several times since the case

21  was filed, but Fantagraphics has declined to begin negotiations unless she first stipulates to

22  judgment in Fantagraphics' favor.  As Ms. Ferris understands Fantagraphics position, it is not

23  asking that a stipulation in its favor be part of a potential settlement, but rather that it is a

24  precondition to beginning settlement negotiations at all.  This condition has thwarted informal

25  settlement progress.  Ms. Ferris is willing, as part of a global settlement, to give Fantagraphics'

26  Book 2.  But she will not agree to compromise her legal claims before negotiations begin.

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 10

1    **b.**    **Plans for alternative dispute resolution (LCR 26(f)(1)(B))**

2         A.    ***Fantagraphics' position.***

3    As its response to this issue, Fantagraphics incorporates here its full response in Paragraph

4    2(a) immediately above.

5         B.    ***Ms. Ferris's position.***

6    Ms. Ferris implores the Court to order the Parties to mediation.  Ms. Ferris believes this

7    case is an excellent candidate for court-ordered mediation pursuant to LCR 39.1 for several

8    reasons.

9    *First*, Ms. Ferris is committed to settling this case to avoid the extraordinary expense of

10   litigation.  Ms. Ferris is an individual.  Litigating this case to trial could quickly bankrupt her.

11   Indeed, engaging in full-blown discovery over a short period of time—as Fantagraphics

12   envisions—will devastate her financially. She would rather focus on finishing Monsters Book 2—

13   something that is in both Parties' interests—rather than spending her time on litigation efforts.

14   Ms. Ferris understands that Fantagraphics is frustrated because it wants to publish Book 2 as soon

15   as possible.  Ms. Ferris is frustrated too; she would very much like to be done with the book, have

16   it published, and be earning revenue from it.  She is served in no conceivable way by delay in

17   publication.  Mediating this case as soon as possible gives the parties the best chance to reach the

18   business solution that serves both Parties' interests.

19   *Second*, Ms. Ferris believes that the Parties are closer to a resolution than their current

20   settlement stalemate might suggest.  The Parties engaged in extensive correspondence prior to the

21   Rule 26(f) conference.  Due in part to a difference in communication styles among counsel and a

22   lack of trust between the Parties, the negotiations did not gain traction.  But they have discussed

23   the elements of a successful settlement, and there are significant points of agreement.  For example,

24   Ms. Ferris is willing to publish Monsters Book 2 with Fantagraphics as part of a global settlement

25   if the Parties can reach agreement on new publishing terms.  Fantagraphics has agreed that the

26   following terms require negotiation, among others: the advance Fantagraphics will pay Ms. Ferris

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    for Book 2 and a publication schedule for Book 2.  Fantagraphics seems to agree that the Parties

2    need to negotiate new contract terms around the release of Monsters Book 2, but its preconditions

3    to negotiation would have Ms. Ferris compromise most of her legal rights before negotiations even

4    begin.  Ms. Ferris believes a neutral mediator could help bridge the gaps and help the Parties come

5    to a mutually agreeable commercial resolution.

6         **c.**       <u>**The existence of any related cases (LCR 26(f)(1)(C))**</u>

7         The Parties are unaware of any related case.

8         **d.**       <u>**A statement of how discovery will be managed (LCR 26(f)(1)(D))**</u>

9              A.       <u>Certain Expedited Discovery (Audit materials)</u>

10   Once a Protective Order is entered, and pursuant to it, the Parties have agreed to expedite

11   certain financial discovery of Fantagraphics.  This will enable Ms. Ferris to have her designated

12   auditors, KPMG, conduct for her a formal "audit" of relevant financial documents.  Once complete,

13   KPMG will provide the results of the audit to both Ms. Ferris and to Fantagraphics, subject (as

14   necessary) to the Protective Order.

15   It is Ms. Ferris's position that she is entitled to the audit materials described in the foregoing

16   paragraph pursuant to Section 9 of the Parties' publishing agreement, and she should not have to

17   rely on civil discovery to access those materials.  She contends it is an ongoing breach of the

18   Publishing Agreement and a breach of the covenant of good faith and fair dealing to withhold

19   those audit materials or condition their disclosure on entry of a Protective Order or participation

20   in litigation. Ms. Ferris reserves all rights with regard to the audit.

21             B.       <u>Whether discovery should be phased (FRCP 26(f)(3)(B))</u>

22             **1.**       ***Fantagraphics position.***

23   As discussed at Paragraph 2(d)(i) immediately above, it was Fantagraphics that

24   affirmatively proposed that the contemplated audit of it -- as part of Ms. Ferris' discovery in this

25   litigation -- could be conducted on an expedited basis.  Depending on the status of that audit at the

26   relevant time, and assuming Fantagraphics can have a subsequent deposition of Ms. Ferris with

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    respect to her counterclaims, Fantagraphics is willing to limit its initial deposition of her to its

2    Declaratory Judgment claim against her. Otherwise, Fantagraphics believes all discovery should

3    be conducted and completed as the earliest possible time, without further "phasing."

4                    **2.**     ***Ms. Ferris's position.***

5         Ms. Ferris believes that discovery should be phased to promote efficient resolution of this

6    case given the Parties' resources.  Ms. Ferris is an individual, and full-blown civil discovery will

7    quickly bankrupt her.  And, as explained, Ms. Ferris is committed to settling this case and believes

8    the Parties can do so with the help of a skilled mediator.  Given these considerations, Ms. Ferris

9    proposes the following approach to discovery:

10        *First*, the Parties complete expedited discovery of audit materials per the foregoing section.

11        *Second*, the Parties participate in mediation per Local Civil Rule 39.1(c). Discovery—

12   except the audit-related discovery—is stayed pending mediation, though the Parties may work in

13   good faith to exchange documents and information prior to the mediation to the extent that

14   exchange would facilitate a productive session.  If the Parties can resolve the case in mediation,

15   they need not engage in expensive and time-consuming discovery.

16        *Third*, if the case does not resolve at mediation, the Parties will meet and confer on a

17   discovery plan and will submit that plan to the Court within 15 days of the mediation.

18                    C.     <u>Document Requests</u>

19        Subject to the Court's approval, the parties agree that a) initial document requests, b) initial

20   interrogatories, and c) initial requests for admissions, be served by December 22, 2021, and that

21   the Parties discuss in good faith the staging and timing of their responses thereto.

22        Ms. Ferris proposes that the Parties complete audit-related discovery and mediation before

23   engaging in full-blown document discovery, for the reasons stated above.

24

25

26

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

D.  Depositions

1.  *Fantagraphics position.*

Fantagraphics will take the depositions of Ferris and non-parties Holly Bemiss and Linda Bernard.  Fantagraphics expects to take the depositions of the non-parties in January 2022 and of Ferris in February 2022.

2.  *Ms. Ferris position.*

Ms. Ferris proposes that the Parties complete audit-related discovery and mediation before engaging in other discovery, for the reasons stated above. Ms. Ferris requests that no depositions take place until after the mediation.  Should the Court reject this phased approach, Ms. Ferris proposes that the Parties take the depositions of Ms. Bemiss and Ms. Bernard in February 2022. Ms. Ferris would then plan to take the deposition of Gary Groth and Fantagraphics in March or April 2022, depending on the status of document production.

E.  Presenting discovery disputes to the Court by informal means

Should the need arise, the Parties anticipate utilizing Judge Coughenour's method of resolving discovery disputes informally via telephone.  *See* Judge John C. Coughenour Chamber's Procedures § E.1.

F.  Expert Witnesses

1.  *Fantagraphics position.*

Fantagraphics states that it does not currently anticipate the use of expert witnesses.

2.  *Ms. Ferris's position.*

Ms. Ferris anticipates hiring a damages expert and possibly also a publishing industry expert.

e.  **The targeted discovery that each side anticipates seeking (LCR 26(f)(1)(E))**

A.  *Fantagraphics position.*

With the one addition set forth in the next sentence, Fantagraphics substantively agrees, on a reciprocal basis, to the subject areas of discovery set forth in Ms. Ferris' response immediately

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

below. The addition is that Fantagraphics will also seek discovery into drafts and other material reflecting the status and content of what Ms. Ferris calls "Book 2" of MONSTERS.

### B.   *Ms. Ferris's position.*

In addition to the audit materials described in § 2.d.3, Ms. Ferris anticipates seeking information in discovery relating to her defense of Fantagraphics' declaratory judgment claim and her prosecution of her breach of contract, breach of good faith and fair dealing, and declaratory judgment claims.   That information includes but is not limited to: all documents and correspondence relating to the Publishing Agreement; all documents and correspondence relating to the anticipated publication of Monsters Book 2; all documents and correspondence relating to Fantagraphics understanding of its rights and responsibilities regarding Monsters Book 2; all documents and correspondence relating to Fantagraphics' use of third-parties to print and/or publish Monsters Book 1; all documents provided to KPMG as part of the audit; and all documents and correspondence relating to Fantagraphics' distribution of Monsters Book 1 through all channels, including foreign distributors and e-commerce channels.

### f.   **Phasing motions to facilitate early resolution of potentially dispositive issues (LCR 26(f)(1)(F))**

### A.   *Fantagraphics' position.*

Fantagraphics believes the adjudication of its Declaratory Judgment claim against Ms. Ferris will require assessments of witness credibility and thus that adjudication will require a trial. Fantagraphics is open to the possibility that Ms. Ferris' "breach" counterclaims could be adjudicated through motions at the completion of discovery into those claims.

### B.   *Ms. Ferris's position.*

The key issue on the declaratory relief claim is interpretation of the Parties' Publishing Agreement and specifically (a) whether it grants Fantagraphics rights to publish a second book, and (b) if so, whether Fantagraphics may publish draft pages from the original manuscript and call it Book 2 as it has threatened to do, despite years of waiting for Ms. Ferris' rewrite.  Ms. Ferris

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

believes that Court can easily make that determination on summary judgment. She contends the contract itself clearly addresses only a single Book. Fantagraphics' purported evidence to the contrary is inadmissible parol evidence.

g.     **Preliminary issues relating to the preservation of discoverable information (LCR 26(f)(1)(G))**

The Parties do not anticipate any issues relating to the preservation of discoverable information and the scope of the preservation obligation.

h.     **Procedure for handling inadvertent production of privileged information (LCR 26(f)(1)(H))**

The Parties plan to include in their stipulated Protective Order a procedure for handling inadvertent production of privileged information. In particular, pursuant to Federal Rule of Evidence 502, the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

i.     **Whether the case will involve the preservation and production of ESI (LCR 26(f)(1)(I)**

The Parties anticipate this case will involve the preservation and production of ESI. The Parties commit to negotiate an ESI order based on the model order proposed by the Western District of Washington.

**3.     COURT-ORDERED TOPICS (DKT NO. 17)**

a.     **Mediation**

A.     ***Fantagraphics' Position.***

As its response to this issue, with respect to possible mediation, Fantagraphics incorporates here its full response at Paragraph 2(a) above.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

        B.     ***Ms. Ferris's Position.***

2

      As stated above, Ms. Ferris believes that this case is an excellent candidate for mediation

3

pursuant to LCR 39.1, and respectfully requests that the Court order the Parties to complete

4

mediation in the short term, prior to substantial discovery. See LCR 39.1(c)(1).

5

   **b.**    **<u>Trial Date</u>**

6

        A.     ***Fantagraphics' Position.***

7

      Fantagraphics believes the case can be ready for trial on June 1, 2022. In this connection,

8

Fantagraphics notes that Ms. Ferris' lawyers have unambiguously pledged to "slow-walk" the

9

progress of the case in every way they can.  For one example, they spurned every Fantagraphics

10

request for an early Rule 26(f) conference and insisted that the conference be held on the last

11

possible date.  This is how they first communicated that pledge/threat, in a September 21, 2021

12

email to Fantagraphics' counsel:

13

14

> I will be transparent:  We do not believe aggressive discovery and a fast trial are in
> Ms. Ferris' best interests and we will oppose them.  She cannot afford a mad race
> to trial.  If Fantagraphics insists on litigating, we will be choosing carefully what
> we invest time in going forward.  In order to conserve her resources we will do the
> minimum required.  Accordingly, we will make ourselves available for a Rule 26(f)
> conference on or around November 29, the deadline set by Judge Coughenour, but
> not before

15

16

17

18

      Fantagraphics notes, and has reminded Ms. Ferris' lawyers, that the Court's Local Rules

19

declare that "It is the obligation of all counsel, as officers of the court, to work toward the prompt

20

completion of each case . . . "

21

        B.     ***Ms. Ferris's Position.***

22

      If the Parties are unable to settle during a court-ordered mediation session, Ms. Ferris

23

believes the case can be ready for trial in February 2023. A race to trial will crush Ms. Ferris

24

financially, and Ms. Ferris believes that it is in the Parties' and the Court's best interest to proceed

25

at a more measured pace than that recommended by Fantagraphics.

26

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 17

1   As noted above, Ms. Ferris believes that the declaratory relief claims can be determined by

2   the Court on cross motions for summary judgment, making trial on those claims unnecessary.  If

3   Fantagraphics feels it has the discovery it needs to make a motion for summary judgment by June

4   2022, it is of course welcome to do so.  But a June trial date on all issues would be exceptionally

5   difficult for Ms. Ferris, both financially and emotionally.

6   **c.**     **Length of Trial**

7   A.   ***Fantagraphics' Position.***

8   Fantagraphics believes the trial will require between three and five days.

9   B.   ***Ms. Ferris's Position.***

10   Ms. Ferris believes that the declaratory relief claims, which are equitable in nature, should

11   be tried separately from the legal claims if they survive summary judgment.  She believes a bench

12   trial on the declaratory relief claims will take one to two days.  A jury trial on the remaining legal

13   claims will take two to three days.

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Dated: December 13, 2021

BY:   */s/ Lauren Watts Staniar*
Judith B. Jennison (SBN WA 36463)
Lauren E. Staniar (SBN WA 48741)
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
JJennison@perkinscoie.com
LStaniar@perkinscoie.com

Attorneys for Defendant / Counterclaimant
EMIL FERRIS

Dated: December 13, 2021

BY:   */s/ Kenneth P. Norwick*
Kenneth P Norwick
NORWICK & SCHAD
110 E 59TH ST
NEW YORK, NY 10022
212-751-4440
Fax: 413-243-1365
Email: ken@norwickschad.com

Judith A Endejan
ENDEJAN LAW LLC
5109 23RD AVENUE W.
EVERETT, WA 98203
206-799-4843
Email: jendejan@gmail.com

Attorneys for Plaintiff / Counter-Defendant
Fantagraphics Books Inc.

JOINT STATUS REPORT
(No. 2:21-cv-00802-JCC) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1
2
3

## CERTIFICATE OF SERVICE

4

I certify under penalty of perjury that on December 13, 2021, I filed the foregoing

5

document via CM/ECF, which effected service on all counsel of record.

6

Dated: December 13, 2021

7
8
9

*s/ Lauren Watts Staniar*
Lauren Watts Staniar

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

CERTIFICATE OF SERVICE
(No. 2:21-cv-00802-JCC) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000