The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FANTAGRAPHICS BOOKS INC., | ) No. 2:21-cv-00802-LK |
| Plaintiff, | ) DECLARATION OF EMIL FERRIS |
| v. | ) |
| EMIL FERRIS, | ) |
| Defendant. | ) |
| | ) |
| EMIL FERRIS, | ) |
| Counterclaim Plaintiff, | ) |
| v. | ) |
| FANTAGRAPHICS BOOKS, INC., | ) |
| Counterclaim Defendant. | ) |

DECLARATION OF EMIL FERRIS - 1
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

I, Emil Ferris, make this declaration based on personal knowledge about which I am competent to testify:

1. I am the defendant/counterclaim plaintiff in the above-entitled action and I make this Declaration in support of my Motion for Partial Summary Judgement.

2. I am a formally trained artist and novelist, holding a Bachelors in Fine Arts and a Masters Degree in Writing from the Art Institute of Chicago. I live and work in Evanston, Illinois. For the past decade I have worked on creating graphic novels among other art and writing projects.

3. In 2012, I began work on a graphic novel telling the story of Karen, a ten-year old girl, who like me grew up poor in Chicago in the 1960s. The mysterious death of Anka, a beautiful young immigrant who lived upstairs, is one focal point in the complex tale.

4. Creating graphic novels is an extremely challenging process for me, because unlike other creators, I do all of the writing, art, color and lettering – I create everything you see on the page.

5. Starting in 2012, I spent four years creating the 600+ page manuscript for the story I entitled *My Favorite Thing is Monsters* (hereinafter "*Monsters*"). The manuscript introduces readers to an array of diverse characters who inhabit a world based on my life as a young girl growing up in Chicago in the 1960s. It is a universe of characters and stories which I intend to use as the base for a number of different books. After I finished the manuscript, which I knew would ultimately require additional editing, I engaged a literary agent, New York City based Holly Bemiss, to shop the manuscript to publishers who might be interested in publishing the work. Plaintiff/counterclaim defendant Fantagraphics Books, Inc., (hereinafter "Fantagraphics") an independent publisher located in Seattle, expressed interest in publishing *Monsters*.

6. I worked with Holly Bemiss in negotiations with Gary Groth, President of Fantagraphics, for the publication of *Monsters*. The negotiations included two elements: 1) the

DECLARATION OF EMIL FERRIS - 2
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

length of *Monsters*, and 2) Fantagraphics' interest in acquiring the rights to the next installment of the story of the characters in *Monsters*.

7. The length of *Monsters* was a concern for Fantagraphics. Groth asserted that a 600+ page manuscript was too long to be commercially marketable. After some negotiation, I agreed to edit the manuscript down to approximately 400 pages. This left approximately 230 pages unused in the book, which have come to be referred to variously as the "remnant", or the "remainder". Like pieces of film that are edited and land on the cutting room floor, I never intended to use the remnant as the principal source for the next installment of *Monsters*, which I started working on before the first book was published.

8. Fantagraphics was interested in acquiring the right to publish the next installment of the story of the characters in *Monsters*, and Groth and Bemiss, with my participation as well, began discussion of that acquisition. In that context, Groth asked me if I could re-purpose any portion of the remnant in that next book. I told him that there were between 30-50 pages of material in the remnant, which could possibly be used. The fact is that the 230 pages could not solve all the mysteries and tie up all the plot strings that remained in a way that would be nuanced and intelligent and answer a reader's curiosity in keeping with the first book and more pages and a different narrative arc would be required.

9. As part of my process in editing down the length of *Monsters*, I created a set of new pages which presented a different ending to the book than had originally been in the manuscript. That new ending is not in any way in alignment with the remnant, so publishing the remnant as the next installment of the story won't make any sense and will be confusing to readers.

10. Although we had many discussions about the terms for publishing the second installment of the story, we never reached an agreement on those terms.

11. Because we had not reached agreement on the terms for a second book, I was not surprised when in December 2015, Fantagraphics sent Bemis a Publishing Agreement for the

DECLARATION OF EMIL FERRIS - 3
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

right to publish, from the 600+ page manuscript, what would ultimately be the newly edited 400 page version of the manuscript as volume one of *Monsters,* without, anywhere in that agreement, any discussion or reference to the second book under discussion. A true and correct copy of the Publishing Agreement that the parties signed is attached hereto as <u>Exhibit A</u>.

12. Fantagraphics published *Monsters* on February 14, 2017. The book was a huge and immediate success. I was honored with awards at the San Diego International Comic-Con convention and at the well-regarded Angoulême International Comics Festival.

13. After *Monsters* was published*,* I went back to work on the next installment of the story. Fantagraphics pressured me to complete that second installment, hoping to capitalize on the success of *Monsters* by quickly bringing a next installment to market. They pressed me to meet several different deadlines, which I was unable to meet because at the same time they were insisting I travel all over the world to attend book signings and comic conventions to help promote the book – which I did, making over 20 such exhausting promotional trips shortly after the book came out.

14. Over the course of the next two years, I started receiving royalty statements and payments from Fantagraphics based on sales of *Monsters.* I noted an odd trend –payments from European sales were high, in the mid-six-figures range, and yet U.S. sales were much lower, in the low five-figure range. Concerned that sales and payments in the U.S. and perhaps elsewhere were being under-reported, I requested an audit of Fantagraphics' books of account, a right given to me in the Publishing Agreement.

15. Fantagraphics resisted the audit, insisting on a broad protective order, which forced me to retain counsel to aid in getting the audit done. It is my understanding that an exchange between my counsel and Fantagraphics, in which my counsel reminded Fantagraphics that the Publishing Agreement did not give them any rights to another installment, led to Fantagraphics' filing their lawsuit.

DECLARATION OF EMIL FERRIS - 4
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

16. Guided by my counsel, over the past several months, I participated in discussions and negotiations aimed at settling this case. All of the negotiations focused on terms for the publication of the new, original manuscript for the next installment of *Monsters*. We never discussed the idea of publishing the remnant as the next book, and I would never agree to do that. Once the book was created – at Fantagraphics' behest – what was left was no longer usable as the basis for the next work in the series.

17. The cost of this litigation has been extremely stressful for me, and has required me to take on extra art commissions to pay the legal fees. Throughout the settlement negotiations, counsel for Fantagraphics repeatedly warned that if I didn't agree to their terms, the costly litigation would be resumed. That threat recently led me to seek less expensive counsel.

18. Fantagraphics' threat, via this lawsuit, to publish the remnant unless I agreed to onerous terms that would compel me to finish my work on the second book on their schedule, is also deeply concerning to me. I fear that publication of the remnant under a title of Volume 2 of *Monsters* would be disappointing to my fans, and would damage my professional reputation and would harm prospects for future books in my planned series.

I declare under penalty of perjury that the foregoing is true and correct, and if called upon, I am prepared to testify competently thereto.

Executed in Evanston, Illinois, on July 5, 2022.

_____
Emil Ferris

DECLARATION OF EMIL FERRIS - 5
No. 2:21-cv-00802-LK

ATKINS IP
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

16. Guided by my counsel, over the past several months, I participated in discussions and negotiations aimed at settling this case. All of the negotiations focused on terms for the publication of the new, original manuscript for the next installment of *Monsters*. We never discussed the idea of publishing the remnant as the next book, and I would never agree to do that. Once the book was created – at Fantagraphics' behest – what was left was no longer usable as the basis for the next work in the series.

17. The cost of this litigation has been extremely stressful for me, and has required me to take on extra art commissions to pay the legal fees. Throughout the settlement negotiations, counsel for Fantagraphics repeatedly warned that if I didn't agree to their terms, the costly litigation would be resumed. That threat recently led me to seek less expensive counsel.

18. Fantagraphics' threat, via this lawsuit, to publish the remnant unless I agreed to onerous terms that would compel me to finish my work on the second book on their schedule, is also deeply concerning to me. I fear that publication of the remnant under a title of Volume 2 of *Monsters* would be disappointing to my fans, and would damage my professional reputation and would harm prospects for future books in my planned series.

I declare under penalty of perjury that the foregoing is true and correct, and if called upon, I am prepared to testify competently thereto.

Executed in Evanston, Illinois, on July 5, 2022.

Emil Ferris

DECLARATION OF EMIL FERRIS - 5
No. 2:21-cv-00802-LK

ATKINS IP
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system

By /s/ Michael G. Atkins
Michael G. Atkins

DECLARATION OF EMIL FERRIS - 6
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983