The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FANTAGRAPHICS BOOKS INC.,

       Plaintiff,

    v.

EMIL FERRIS,

       Defendant.

_____

EMIL FERRIS,

       Counterclaim Plaintiff,

    v.

FANTAGRAPHICS BOOKS, INC.,

       Counterclaim Defendant.

_____

) No. 2:21-cv-00802-LK
)
) FERRIS' REPLY BRIEF IN SUPPORT OF
) HER MOTION FOR PARTIAL SUMMARY
) JUDGMENT AND MOTION TO STRIKE
) FANTAGRAPHICS' INADMISSIBLE
) EVIDENCE
)
) NOTED ON MOTION CALENDAR:
) July 29, 2022
)
)
)
)
)
)
)
)
)
)
)
)

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

**INTRODUCTION**

Fantagraphics' extensive response to Ferris' motion fails to answer a simple question: Why doesn't the Publishing Agreement expressly provide for a second volume?  It would have been easy to do.  Paragraph 1 of the Agreement defines "Book" to mean "a compilation of the Work in book form currently titled *My Favorite Thing is Monsters*."  If the parties had meant for the Agreement to cover a second volume, they could have added to that definition "…which is to be published in two volumes."  If they had done so, Fantagraphics would have the missing term that it now wants the Court to supply.  But that's not what the Agreement says, even though Fantagraphics drafted it and could have proposed any language it wanted.

Applying *Hearst* and the parol evidence rule, the Court should give effect to the plain terms that are contained in the Agreement and not consider extrinsic evidence that changes the ordinary meaning of those terms.  For this reason, it should strike the Declaration of Gary Groth, which amounts to a 20-page attempt to prove that "Book" means "Books."  The Court should also strike that declaration because it violates 28 U.S.C. § 1746; it relies on documents that it does not attach, let alone authenticate; and because it is filled with hearsay.

Under *Hearst*, the Court should not "interpret what was intended to be written but what was written."  Because the parties agree that what was written is unambiguous – and because it only yields one reasonable interpretation – the Court should dismiss Fantagraphics' claim for declaratory judgment and enter judgment for Ferris on her competing counterclaim for declaratory judgment as a matter of law.

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

A. ___Hearst___ **Both Supports the Application of the Parol Evidence Rule in This Case, and Farris' Interpretation of the Publishing Agreement.**

Fantagraphics claims that *Hearst* compels the Court to admit the extrinsic evidence it offers – which the Court can only do by ignoring the parol evidence rule.[1]  Not surprisingly, however, *Hearst* stands for the opposite proposition.

In *Hearst*, the Washington Supreme Court considered the joint operating agreement between Seattle's two daily newspapers, *The Seattle Times* and the Hearst-owned *Seattle Post-Intelligencer*.  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 495 (2005) (*en banc*).  Hearst claimed that the Seattle Times breached the agreement by invoking the "loss operations" clause, which enabled the Times to terminate the agreement after three consecutive years of operations losses.  *Id*. at 501.  The Times argued it was entitled to trigger the clause because it had, in fact, suffered three consecutive years of losses.  *Id*.  Hearst countered that the losses were the result of *force majeure*, namely, a strike, and that the loss operations clause was intended to apply only if future changes in the market made the Seattle area unable to support two newspapers.  *Id*.  Both parties offered extrinsic evidence in support of their positions.  *Id*.

The trial court granted summary judgment in favor of Hearst, relying almost exclusively on that extrinsic evidence to support its decision.  *Id*. at 500.  The Court of Appeals reversed and ordered entry of summary judgment in favor of the Times.  *Id*.  The Supreme Court affirmed.  *Id*.

The Supreme Court understood the harsh and powerful impact of its decision – by finding for the Times, it would likely cause the *Post-Intelligencer* to close.  *Id*. at 495.  Despite such a lamentable result, it recognized: "Our duty . . . is to interpret and apply the law."  *Id*.  In doing so, the Supreme Court found that the operating agreement was subject to only one reasonable

---

[1] *See*, *e.g*., Fantagraphics' Opp'n to Ferris' Mot. for Partial Sum. J. (Dkt. #35) ("Opp'n Brief") at 11:14-16 ("…*Hearst* effectively requires that [extrinsic] evidence be considered in interpreting the Agreement.") (emphasis in original).

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

interpretation. *Id.* Therefore, there was no need to look elsewhere for help interpreting the contract. In its words: "Extrinsic evidence offered by the parties is not relevant to our inquiry." *Id.* at 512.

The Supreme Court noted that although Hearst understood that the Times could only terminate the agreement if the Seattle economy had so deteriorated that it was no longer feasible to operate more than one newspaper, "nowhere in the text of the [agreement] is there language supporting" that interpretation. *Id.* at 509. It found that "[i]f the parties intended the [agreement] could be terminated <u>only</u> upon a showing that the marketplace would no longer support two newspapers . . . they failed to express that intent within the agreement they wrote." *Id.* at 510 (emphasis in original). As such, "Hearst essentially asks us to rewrite the [agreement] by revising the loss operations clause, something we are not at liberty to do." *Id.*

Against this backdrop, the Supreme Court took the opportunity to note that previous courts may have misunderstood *Berg v. Hudesman,* 115 Wn.2d 657 (1990), "as authorizing unrestricted use of extrinsic evidence in contract analysis, thus creating unpredictability in contract interpretations." *Id.* at 503. It then stated:

> We take this opportunity to acknowledge that Washington continues to follow the objective manifestation theory of contracts. Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. We impute an intention corresponding to the reasonable meaning of the words used. Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. We do not interpret what was intended to be written but what was written.

*Id.* at 503-04 (citations omitted).

This holding both supports the parol evidence rule in this case and Ferris' interpretation of the Publishing Agreement. Applying *Hearst* to this case:

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3
No. 2:21-cv-00802-LK

ATKINS IP
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

- The Court should interpret the words that were written in the Publishing Agreement (*e.g.*, "Book," singular), not the words that Fantagrahics claims were intended to be written (*e.g.*, "Books," plural);

- The Court should give the words their "ordinary, usual, and popular meaning" (*e.g.*, "Book" is ordinarily understood to be a single writing, not a series of writings); and

- The Court should determine the parties' intent from the actual words used in the Agreement, rather than any unexpressed subjective intent – which is "irrelevant."

As with *Hearst* – a case decided on summary judgment – Fantagraphics asks this Court to rewrite the Publishing Agreement: to substitute "Books" for "Book." *Hearst* indicates that the Court should not do so. "Nowhere in the text" of the Publishing Agreement "is there language supporting" Fantagraphics' interpretation. *Id*. at 509. As such, the Court should not consider the extrinsic evidence that Fantagraphics offers in an effort to provide it. Extrinsic evidence simply "is not relevant" to the Court's inquiry. *Id*. at 512. *See also*, *Phytelligence, Inc. v. Washington State Univ.*, No. C18-405-RSM, 2019 WL 2491911, at *4 (W.D. Wash. June 14, 2019) (excluding on summary judgment plaintiff's extrinsic evidence offered in support of its contract claim) (quoting *Hearst*, 154 Wn.2d at 503; additional citations omitted).

**B.** **The Publishing Agreement Is Unambiguous. Therefore, the Court Should Construe It as a Matter of Law.**

**1.** **The parties agree that the Publishing Agreement is unambiguous.**

Fantagraphics' Complaint states that "there is nothing 'ambiguous' about the Publishing Agreement, including with respect to the identification of the work to be published pursuant to it."[2] This constitutes a judicial admission – a point that Fantagraphics' brief does not dispute.[3] *See Badgley v. F/V Redemption*, No. C13-2000-RSL, 2015 WL 11237491, at *2 (W.D. Wash.

---

[2] Complaint for Declaratory Judgment (Dkt. #2) ("Complaint") at ¶ 12.

[3] *See* Opp'n Brief.

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

Jan. 22, 2015) ("Statements contained in the pleadings are judicial admissions. . . unless amended, these statements conclusively bind the party who made them.") (*citing Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995)).  "The general rule is that a party cannot create a triable issue by relying on a declaration that is inconsistent with the facts alleged in its complaint."  *PTP OneClick, LLC v. Avalara, Inc.*, No. C19-0640-JLR, 2020 WL 4729174, at *7 (W.D. Wash. May 27, 2020) (citations omitted).  Because Fantagraphics did not attempt to withdraw its judicial admission that the Publishing Agreement is unambiguous, it cannot defeat Ferris' motion by taking the opposite position now.

Ferris agrees that "there is nothing 'ambiguous' about the Publishing Agreement. . . ."[4] Therefore, the Court should construe it as a matter of law.  *See Orbridge LLC v. Safari Legacy, Inc.*, No. 3:20-CV-6259-BJR, 2021 WL 3269599, at *4 (W.D. Wash. July 30, 2021) ("If a contract is unambiguous, summary judgment is proper[.]") (brackets in original; *quoting Voorde Poorte v. Evans*, 66 Wn. App. 358, 362 (1992)).  This is true even if the parties disagree about its meaning.  *See Mayer v. Pierce County Medical Bureau, Inc.*, 80 Wn. App. 416, 420 (1995) ("If a contract is unambiguous, or its language, in context, has but one reasonable meaning, a court may grant summary judgment even if the parties dispute the legal effect of a term or provision.").  It is also true even if the outcome is viewed by the losing party as being harsh.  As *Hearst* demonstrates, what's important is that the Court enforce the objective manifestations of the parties' bargain.

### 2.    The plain text of the Publishing Agreement provides that it is limited to the book that Fantagraphics has already published.

The unambiguous Publishing Agreement is titled, "Publishing Agreement / *My Favorite Thing Is Monsters*."[5]  It is undisputed that Fantagraphics has already published a book titled

---

[4] Complaint at ¶ 12; Ferris' Mot. for Partial Sum. J. (Dkt. #33) ("Ferris' Mot.") at 2:10, 11:9-15.

[5] Decl. Emil Ferris (Dkt. #34) ("Ferris Decl.") at Ex. A (Dkt. #34-1) ("Publishing Agreement") (at 1).

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

*My Favorite Thing is Monsters*.[6]

The unambiguous Publishing Agreement addresses a single "Book," a single "Work," a single "compilation" of Ferris' writing, and a single reprint "edition."[7]  The Agreement notably does not use "Books," "Works," "compilations," and "editions" – the plural form of these words.[8]  Because the Publishing Agreement does not "clearly demonstrate[] a contrary intent," the Court should give its words "their ordinary, usual, and popular meaning."  *Hearst,* 154 Wn.2d at 504 (internal citations omitted).

The unambiguous Agreement also does not mention giving Fantagraphics the additional right to publish a remnant, second volume, second part, or sequel.[9]  *See id*. ("We do not interpret what was intended to be written but what was written.").  Indeed, Ferris explains that the edited-out "remnant" was not the second part of the story in any case; it was "[l]ike pieces of film that are edited and land on the cutting room floor. . . ."[10]  By the time she delivered the edited work to Fantagraphics, the unused pieces that remained would not "make any sense and [would] be confusing to readers" if presented as a continuation of the story.[11]

Fantagraphics, for its part, "completely agree[s]" with the "factual and legal conclusion that '[t]he Agreement by its express terms pertains only to the Monsters book" (singular).[12]  It also admits that "as far as Fantagraphics is aware[,] the word and the concept of a 'sequel' to

---

[6] Complaint at ¶ 10; Ferris Decl. at ¶ 12.

[7] Publishing Agreement at ¶¶ 1(a), 2, 3(a)(i)-(vii), 4(a)(i)-(ii), 4(b), 4(d), 4(e), 5, 6(a).

[8] *See id*.

[9] *See* Publishing Agreement.

[10] Ferris Decl. at ¶ 7.

[11] *Id*. at ¶¶ 8-9.

[12] Complaint at ¶ 25.

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

MONSTERS was never once used in any of the prior five-plus years of communications between the parties[;] and Fantagraphics never once expressed any interest or desire to publish a 'sequel' to MONSTERS."[13]

The Court should give effect to the plain terms of the unambiguous Publishing Agreement, including what it says, and what it conspicuously doesn't say. Because the Publishing Agreement only addresses a single "Book," "Work," "compilation," and "edition," and does not address any other writings – including the so-called remnant – the Court should conclude as a matter of law that it only governs the *Monsters* book that Fantagraphics has already published. *See id*.

**C.      The Court Should Strike the Declaration of Gary Groth.**

       **1.      The Groth Declaration violates the parol evidence rule.**

Consistent with *Hearst*, if a written contract is fully integrated, extrinsic evidence is not admissible under the parol evidence rule to add to or vary the contract's terms. *Hulbert v. Port of Everett*, 159 Wn. App. 389, 400 (2011). In this way, an integration clause limits "the evidence available to the parties should a dispute arise over the meaning of the contract. . . ." *Fairhaven Health, LLC v. BioOrigyn, LLC*, No. 2:19-CV-01860-RAJ, 2020 WL 5630473, at *7 (W.D. Wash. Sept. 21, 2020) (quoting *FMC Techs., Inc. v. Edwards*, No. C05-946-C, 2007 WL 1725098, at *4 (W.D. Wash. June 12, 2007), *aff'd,* 302 F. App'x 577 (9th Cir. 2008)).

Here, Fantagraphics does not dispute that the Publishing Agreement is fully integrated.[14] Nor could it. Not only does the Agreement provide all the essential terms under which the parties have operated for 5+ years, it expressly states that it reflects the parties' entire understanding:

---

[13] *Id.*

[14] *See* Opp'n Brief.

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> Entire Understanding.  This Agreement contains the entire understanding of the parties with respect to its subject matter.  Any and all representations or agreements by any agent or representative of either party to the contrary shall be of no effect.[15]

The Agreement further states: "No waiver or modification of any of the terms of this Agreement shall be valid unless in writing, signed by both parties."[16]  Taken together, these terms express the parties' clear intent that the Publishing Agreement reflects their entire agreement as to Fantagraphics' right to publish *Monsters*.

As a fully integrated contract, the parol evidence rule estops Fantagraphics from offering evidence of side understandings that purport to change the Agreement's plain terms – which is exactly what the Groth Declaration attempts to do.[17]  It's a "20-page, 67-paragraph" attempt to explain the meaning of a six-page agreement.[18]  However, the Publishing Agreement speaks for itself.  There's no ambiguity as to what a "Book" is, and that the singular form of that word is different from the plural.  The Court should strike Fantagraphics' wrongful declaration that attempts to prove otherwise: that "Book" actually means "Books."

2.  **The Groth Declaration does not substantially comply with 28 U.S.C. § 1746, does not authenticate the documents on which it relies, and is filled with hearsay.**

Besides being inadmissible under *Hearst* and the parol evidence rule, the Groth Declaration does not substantially comply with 28 U.S.C. § 1746; it is not based entirely on personal knowledge; it does not authenticate most of the documents on which it relies (or even attach them); and it is filled with inadmissible hearsay.

---

[15] Publishing Agreement at Miscellaneous (at ¶ (e)).

[16] *Id*. at ¶ (c).

[17] *See* Groth Decl.

[18] Opp'n Brief at 2:9.  *See also*, Groth Decl.

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

Among other requirements, a declaration offered in opposition to a motion for summary judgment must be signed and certified as true under penalty of perjury.  *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4).  To be admissible, the declaration must be made "substantially" in the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct."  28 U.S.C. § 1746(2).  *See also*, *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999).  The purpose of this affirmation is to be certain that "the declarant understands the legal significance of the declarant's statements and the potential for punishment if the declarant lies."  *United States v. Bueno-Vargas*, 383 F.3d 1104, 1111 (9th Cir. 2004).

The Groth Declaration (which Fantagraphics originally submitted unsigned) does not state that the ostensible facts stated therein are "true and correct."[19]  This prevents it from substantially complying with 28 U.S.C. § 1746.  *See Hoffman v. PennyMac Holdings, LLC*, No. C17-1062-JLR, 2018 WL 6448779, at *3 (W.D. Wash. Dec. 10, 2018) (noting that "substantial compliance" requires a declaration to state that "'the contents [a]re true and correct.'" (brackets in original; quoting *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995)); *Satterwhite v. Dy*, No. C11-528-RAJ, 2012 WL 748287, at *2 (W.D. Wash. Mar. 5, 2012) (striking declarations because "they do not attest that their statements are true and correct as required by 28 U.S.C. § 1746"); Fed. R. Civ. P. 56(c)(4).

The Groth Declaration also is not based entirely on personal knowledge.  For example, Mr. Groth writes:

> When this action was commenced, the only extant "Book 2" <u>we</u> were aware of was the second half of Ferris' original submission of MONSTERS.  As a result, <u>our</u> claim for a Declaratory Judgment was necessarily limited to that work. Obviously, if Ferris ever actually completed her long-promised "polished" version

---

[19] *See* Groth Decl.  Fantagraphics instead curiously asks the Court to determine "whether my assertions or Ferris' assertions are true or false. . . ."  *Id*. at ¶ 67.

FERRIS' REPLY BRIEF IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

> – in whatever form that "polishing" took – <u>we</u> assume (and will assert in this litigation) that <u>our</u> requested Declaratory Judgment should encompass any "polished" version that Ferris may actually complete, precisely because the Publishing Agreement as consistently understood and agreed by both parties so contemplated and intended.[20]

Mr. Groth's unexplained shift to the plural forms "we" and "our" indicates that this statement is not based on his own personal knowledge.  His assurance that Ms. Ferris' assistant "will confirm" the substance of what Ms. Ferris told her in another conversation suffers from the same defect.[21]  As such, these statements are not admissible.  *See* Fed. R. Civ. P. 56(c)(4).

The Groth Declaration is further inadmissible because it purports to summarize documents, but does not offer the documents into evidence, let alone authenticate them.[22] "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a)) (additional citations omitted).   The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."  *Id*. (collecting cases).   "In a summary judgment motion, documents authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'"  *Id*. at 773-74, *quoting Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987) (additional citations omitted).

---

[20] *Id*. at ¶ 62 (emphasis added).

[21] *See id*. at ¶ 57.

[22] *See, e.g.*, *id*. at ¶¶ 4-5, ¶¶ 7-10, ¶ 12, ¶ 16, ¶¶ 18-21, ¶ 23, ¶¶ 25-26, ¶¶ 28-32, ¶ 34, ¶ 36, ¶¶ 38-60, ¶ 63 (referring to approximately 45 letters, emails, writings, ostensible agreements, and other out-of-court statements that are neither attached to the Groth Declaration nor are authenticated).

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

Because the Groth Declaration does not attach or authenticate most of the documents on which it relies – approximately 45 such documents – it lacks foundation as to those documents. *See* Fed. R. Evid. 901(a), 1002.  Its many assertions about what documents say (or what Mr. Groth, Ms. Ferris, or others did, said, or agreed to inside or outside those documents) also constitute inadmissible hearsay.[23]  *See* Fed. R. Evid. 801, 802; *Orr*, 285 F.3d at 783 ("To defeat summary judgment, [the nonmoving party] 'must respond with more than mere hearsay and legal conclusions.'") (quoting *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1104 (9th Cir. 1986)).

In short, the Groth Declaration is filled with inadmissible statements.  Since the Court should not consider inadmissible evidence on summary judgment, it should strike the Groth Declaration in its entirety.  *See Orr*, 285 F.3d at 773 (citations omitted); Fed. R. Civ. P. 56(c)(2), (4).

### D. Summary Judgment Is Appropriate Because Fantagraphics Did Not Support Its Opposition Under Rule 56(c)(1)(A).

Finally, the Court should grant summary judgment because Fantagraphics failed to support its response under Federal Rule of Civil Procedure 56(c)(1)(A).  This requires a party opposing a motion for summary judgment to support the assertion that a fact is genuinely

---

[23] *See*, *e.g.*, *id.* at ¶ 15 ("…Ferris agreed that it could include the proposed Book 2 front-cover…."), ¶ 16 ("…Ferris advised Fantagrahics that she wanted to edit somewhat ('polish') the second half of MONSTERS…."), ¶ 19 ("…Ferris agreed to deliver her 'polished' version of the second half of her original manuscript in time for it to be prepared for publication and then published in July 2017"), ¶ 20 ("With Ferris' full support and agreement … Fantagraphics published the first volume of MONSTERS in February 2017"), ¶ 23 ("…Ferris and Bemis and Fantagraphics agreed to reschedule the publication of Book 2 to October 2017, with Ferris again promising that she would deliver her 'polished' version in time to have it published then."), ¶ 25 ("After further communication with Ferris and Bemis, the parties agreed that Book 2 would now be published in April 2018…."), ¶ 29 ("Fantagraphics then informed Ferris that it could not risk further damaging its relationships with its distributors…."), ¶ 30 ("…Ferris repeatedly confirmed in writing that MONSTERS would be published in two volumes…."), ¶ 31 ("…[T]here is also a trove of similar such communications by Bemiss, Ferris' agent…."), ¶ 52 ("…Ferris and Fantagraphics agreed to create and publish a 'one shot' 32-page comic gook to help promote both Book 1 and Book 2 of MONSTERS."), ¶ 57 ("Bernard has and will confirm that Ferris directly told her that she (Ferris) was obligated to complete and deliver Book 2 to Fantagraphics….").

FERRIS' REPLY BRIEF IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT - 11
No. 2:21-cv-00802-LK

ATKINS IP
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983

disputed by "citing to particular parts of materials in the record."  Tellingly, Fantagraphics'
Opposition Brief did not satisfy this requirement.[24]  The Court is "not required to comb through
the record to find some reason to deny a motion for summary judgment."  *Carmen v. San
Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac.
Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party
opposing summary judgment must direct [the Court's] attention to specific triable facts."
*Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  Because
Fantagraphics did not do so, the Court should not hesitate to grant Ferris' motion for summary
judgment.

DATED this 29th day of July, 2022.

MARC GREENBERG, ATTORNEY AT LAW

By /s/ Marc Greenberg
   Marc Greenberg
   Pro Hac Vice
   Golden Gate University School of Law
   536 Mission Street
   San Francisco, CA 94105-2968
   (415) 235-3352
   *mhg@marcgreenberglaw.com*

ATKINS INTELLECTUAL PROPERTY, PLLC

By /s/ Michael G. Atkins
   Michael G. Atkins
   WSBA# 26026
   Atkins Intellectual Property, PLLC
   113 Cherry Street #18483
   Seattle, WA 98104-2205
   (206) 628-0983
   *mike@atkinsip.com*

Attorneys for Emil Ferris

---

[24] *See* Opp'n Brief.

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
No. 2:21-cv-00802-LK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.

By /s/ Michael G. Atkins
Michael G. Atkins

FERRIS' REPLY BRIEF IN SUPPORT
OF HER MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13
No. 2:21-cv-00802-LK

**ATKINS IP**
113 Cherry Street #18483
Seattle, WA 98104-2205
(206) 628-0983